OPINION
{¶ 1} Plaintiff-appellant, Nicole Cunningham ("appellant"), as the personal representative of the Estate of Kirsten Cunningham, deceased, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Children's Hospital, Steven Teich, M.D. ("Dr. Teich"), and Columbus Pediatric Surgical Assoc., Inc. ("Columbus Pediatric") (collectively "appellees").
 {¶ 2} On May 30, 2003, appellant filed her complaint against Children's Hospital, Dr. Teich, Columbus Pediatric, William Wallace, M.D., and unidentified Doe defendants, alleging claims for medical malpractice and wrongful death.[1] Such claims arise as a result of the death of appellant's daughter, Kirsten Cunningham ("Kirsten"), who was born on February 17, 1999. On March 9, 1999, Kirsten was admitted to Children's Hospital, where she remained until she was discharged on August 27, 1999. After Kirsten's discharge from Children's Hospital, appellant traveled across the street to the Ronald McDonald House, where she had been staying during Kirsten's hospitalization. Noticing Kirsten's labored breathing, appellant immediately returned to the Children's Hospital emergency room, where Kirsten died the same day.
 {¶ 3} In her complaint, appellant alleged that appellees were professionally negligent and fell below accepted standards of medical care by:
* * * [F]ail[ing] to timely recognize, assess, evaluate and diagnose and treat the serious signs and symptoms exhibited by Kirsten Cunningham in the days prior to her discharge; fail[ing] to recommend immediate surgical or medical intervention; and otherwise unnecessarily delay[ing] the urgent medical and surgical care required by Kirsten Cunningham. Appellant further alleged that appellees' negligence "caused Kirsten Cunningham to be prematurely discharged from the hospital and to expire before she left the hospital campus."
 {¶ 4} In August 2004, appellees filed motions for summary judgment supported by Dr. Teich's expert affidavit. Appellant responded to appellees' motions and submitted her own affidavit, along with a copy of an unsigned, unsworn letter purportedly authored by Alison St. Germaine Brent, M.D. ("Dr. Brent"). On December 22, 2004, the trial court issued a decision granting appellees' motions for summary judgment.[2] The trial court filed its final judgment entry on January 26, 2005.
 {¶ 5} In her sole assignment of error, appellant asserts:
THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.
 {¶ 6} Under her single assignment of error, appellant argues that she submitted expert evidence sufficient to overcome appellees' motions for summary judgment, that she was not required to produce expert evidence in support of her claims, and that the doctrine of res ipsa loquitur applies and obviates any need for expert evidence in support of her claims. Because we find that the trial court appropriately entered summary judgment in appellees' favor, we affirm.
 {¶ 7} We conduct a de novo review of a trial court's grant of summary judgment. Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. We apply the same standard as the trial court and conduct an independent review, without deference to the trial court's determination. Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown
at 711. We must affirm the trial court's judgment if any of the grounds the movant raised before the trial court support the judgment. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38,41-42.
 {¶ 8} Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. A party seeking summary judgment "bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996),75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the non-movant must then produce competent evidence of the types listed in Civ.R. 56(C) showing the existence of a genuine issue for trial. Id. at 293.
 {¶ 9} In Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, paragraph one of the syllabus, the Ohio Supreme Court set forth the following requirements for a medical malpractice action:
In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things.
The Supreme Court explained that:
"Proof of malpractice, in effect, requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind of case, and a showing that the physician in question negligently departed from this standard in his treatment of plaintiff. * * *"
Id. at 131, quoting Davis v. Virginian Ry. Co. (1960),361 U.S. 354, 357.
 {¶ 10} Whether a physician or surgeon's treatment of a patient conformed to the requisite standard of care and skill must ordinarily be determined from the testimony of medical experts. Bruni at 130, citing 41 American Jurisprudence, Physicians Surgeons, Section 129; and 81 A.L.R.2d 590, 601. However, the Supreme Court recognized an exception to the general rule requiring expert testimony "where the nature of the case is such that the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it[.]" Bruni at 130.
 {¶ 11} Defendants met their initial burden under Civ.R. 56 by producing Dr. Teich's expert affidavit. After setting forth facts establishing his competency to render expert testimony, Dr. Teich opined that the medical and surgical care and treatment he provided to Kirsten, throughout the period of her hospitalization at Children's Hospital, met and complied with the requisite standard of care required of a general and pediatric surgeon under like and/or similar circumstances and had no proximate causal relationship to Kirsten's death. Dr. Teich also opined that the medical care and treatment that the nurses and staff of Children's Hospital provided to Kirsten, throughout the period of her hospitalization, met and complied with the requisite standard of care and had no proximate or causal relationship to Kirsten's death.
 {¶ 12} In its decision granting appellees' motions for summary judgment, the trial court found that appellant failed to present expert evidence regarding the applicable standard of care and appellees' alleged failure to conform to that standard to rebut Dr. Teich's expert opinions. In the absence of an opposing affidavit of a qualified expert witness for the plaintiff, a defendant-physician's affidavit attesting to his compliance with the applicable standard of care presents a legally sufficient basis upon which a trial court may enter summary judgment in a medical malpractice action. Marcum v. Holzer Clinic, Inc.,
Gallia App. No. 03CA25, 2004-Ohio-4124, at ¶ 19.
 {¶ 13} Appellant initially argues that she presented sufficient expert testimony, in the form of Dr. Brent's unsigned letter, to overcome appellees' motions for summary judgment. In her letter, Dr. Brent stated that she reviewed Kirsten's medical records from Children's Hospital, a family journal covering the period of Kirsten's life, and a videotape. Dr. Brent opined that the physicians, nurses, and hospital fell below the applicable standard of care in discharging Kirsten. Dr. Brent further stated that "[h]ad Kirsten been treated promptly and appropriately on 8/27/99 I believe that more likely than not her outcome would have been different and she would be alive today." Appellees objected to Dr. Brent's letter, arguing that it does not fall within the types of evidence a court may consider for purposes of summary judgment and fails to demonstrate Dr. Brent's competency to render expert testimony.
 {¶ 14} Civ.R. 56(C) sets forth an exhaustive list of evidence that a court may consider when ruling on a motion for summary judgment. Under Civ.R. 56(C), a court may consider "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action[.]" Civ.R. 56(C) expressly cautions that "[n]o evidence or stipulation may be considered except as stated in this rule." Dr. Brent's letter does not fall within the categories of evidence listed in Civ.R. 56(C).
 {¶ 15} The proper procedure for introducing evidentiary matter of a type not listed in Civ.R. 56(C) is to incorporate the material by reference into a properly framed affidavit. Martinv. Central Ohio Transit Auth. (1990), 70 Ohio App.3d 83, 89, citing Biskupich v. Westbay Manor Nursing Home (1986),33 Ohio App.3d 220. Thus, a party may introduce an expert opinion contained in a letter as evidence during summary judgment proceedings by incorporating it into a properly framed affidavit.El-Mahdy v. Univ. Hosps. of Cleveland, Cuyahoga App. No. 85019, 2005-Ohio-2830, at ¶ 11, citing Martin at 89. Without incorporating Dr. Brent's letter into a properly framed affidavit, appellant simply attached copies of the letter to her opposing memoranda. In El-Mahdy, the Eighth District Court of Appeals held that an expert's letter not incorporated into a properly framed affidavit lacks any evidentiary value and that the trial court properly disregarded it in deciding a motion for summary judgment. El-Mahdy at ¶ 11. Because Dr. Brent's letter does not fall within the types of evidence listed in Civ.R. 56(C) and because appellant failed to incorporate its contents into a properly framed affidavit, we conclude that the trial court did not err in disregarding Dr. Brent's letter.
 {¶ 16} In addition to arguing that Dr. Brent's letter was improper under Civ.R. 56(C), appellees also argued that Dr. Brent's letter was inadmissible because it did not demonstrate Dr. Brent's competency to render expert testimony. Civ.R. 56(E) requires that affidavits supporting or opposing a motion for summary judgment must, inter alia, "show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." For an individual to be competent to provide expert testimony on the issue of liability in a medical malpractice case, the individual must be licensed to practice medicine and must devote at least one-half of his or her professional time to active clinical practice in the field of licensure or to its instruction at an accredited school. Evid.R. 601(D).
 {¶ 17} The determination of a medical witness' competency to testify is within the sound discretion of the trial court, and an appellate court will not reverse that determination absent an abuse of discretion. Stuller v. Price (Sept. 20, 2001), Franklin App. No. 00AP-1355. Dr. Brent's letter does not demonstrate her competency to testify as an expert witness on appellant's behalf. Dr. Brent does not detail her qualifications, does not state that she is licensed to practice medicine in Ohio or any other state, and does not state what portion of her professional time she devotes to the active clinical practice of medicine or to its instruction at an accredited school.
 {¶ 18} A trial court does not abuse its discretion in disregarding an expert's affidavit that does not set forth the information required to qualify the affiant to give expert testimony. Stuller; see, also, Fiske v. Rooney (1995),105 Ohio App.3d 269, 273. A plaintiff's failure to establish the competency of its medical expert is grounds for summary judgment.Kurlansky v. Blythe, Hamilton App. No. C-010329, 2004-Ohio-766, at ¶ 22. Therefore, we find that the trial court did not abuse its discretion in excluding Dr. Brent's letter based on her failure to set forth facts satisfying the qualifying criteria required by Evid.R. 601(D).
 {¶ 19} Appellant next argues that her claims do not require expert testimony because laymen can reasonably evaluate appellees' conduct. Appellant argues that Kirsten's death, immediately after leaving the hospital, constitutes a "ringing endorsement of a premature discharge." As stated above, no expert testimony is required to establish a medical malpractice claim when the defendant's lack of skill or care is so apparent as to be within the comprehension of laymen, and requires only common knowledge and experience for an understanding of it. Bruni at 130. On the contrary, however, expert evidence "is required where the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill." (Emphasis added.) Jones v. Hawkes Hosp. of Mt. Carmel
(1964), 175 Ohio St. 503, paragraph one of the syllabus. Having already determined that appellant failed to produce competent expert testimony in support of her claims, appellant could only survive appellees' properly supported motions for summary judgment if her claims fall within the common knowledge exception set forth in Bruni.
 {¶ 20} As this court noted in Buerger v. Ohio Dept. ofRehab. Corr. (1989), 64 Ohio App.3d 394, "[r]elatively few courts in Ohio have found the common knowledge exception applicable so as to obviate the need for expert witness testimony on the malpractice issue." Id. at 399. The common knowledge exception has a limited scope in a world of increasing medical complexity. Id.
 {¶ 21} In general, Ohio courts have found the common knowledge exception applicable in cases dealing with gross inattention during patient care or miscommunication with a patient. Lipp v. Kwyer, Lucas App. No. L-02-1150, 2003-Ohio-3988, at ¶ 14. Many such cases deal with supervisory negligence and involve fact patterns in which a patient suffered injury after a medical provider has left the patient unattended. See Burks v. Christ Hosp. (1969), 19 Ohio St.2d 128, 131
(sedated, obese patient fell from hospital bed without side rails); Jones at 505 (delirious, restless, and pregnant woman fell while attempting to climb over side rails and out of bed after nurse left her unattended); LaCourse v. Flower Hosp.,
Lucas App. No. L-02-1004, 2002-Ohio-3816, at ¶ 16 (70-year-old, 270-pound patient who was paralyzed on her left side fell while allegedly left unattended and supported wholly by a walker);Dimora v. Cleveland Clinic Found. (1996), 114 Ohio App.3d 711,718 (patient fell after student nurse left her unattended at her walker while opening a door). Ohio courts have also applied the common knowledge exception where the alleged negligence results from miscommunication between a doctor and patient. SeeSchraffenberger v. Persinger, Malik Haaf, M.D.s, Inc. (1996),114 Ohio App.3d 263, 267 (patient alleged that doctor negligently and erroneously informed him that he was sterile following a vasectomy).
 {¶ 22} The instant case involves neither administrative or supervisory negligence nor miscommunication between a doctor and patient. Rather, appellant's allegations of negligence revolve around appellees' decision to discharge Kirsten, a determination that required the exercise of appellees' professional judgment. The decision whether to discharge a patient from the hospital is analogous to a paramedic's decision whether to transport a patient to the hospital after responding to an emergency call. InWright v. Hamilton (2001), 141 Ohio App.3d 296, the plaintiff sued a paramedic and the City of Hamilton, alleging that the injuries she suffered as a result of a stroke were compounded by the defendants' failure to transport her to a hospital after responding to her 911 call. Id. at 299. The Twelfth District Court of Appeals held that, "[a]s the standard of care expected of a paramedic making a decision whether to transport a patient to the hospital is not sufficiently obvious that nonprofessionals could reasonably evaluate the defendants' conduct, expert testimony is necessary to establish the appropriate standard of care." Id. at 302.
 {¶ 23} Like the standard of care at issue in Wright, the standard of care required of a doctor deciding whether to discharge a patient is not sufficiently obvious that nonprofessionals could reasonably evaluate the doctor's conduct. The fact that Kirsten tragically died shortly after her discharge does not alter this conclusion. Appellant's allegations of negligence go to appellees' professional skill and judgment, matters not within the common knowledge and experience of laymen. Because appellees' alleged lack of skill or care was not so apparent as to be within the comprehension of laymen, appellant was required to present expert testimony regarding the applicable standard of care, appellees' failure to conform to that standard, and proximate causation. Because she failed to do so, appellees were entitled to summary judgment.
 {¶ 24} Lastly, appellant argues that the doctrine of res ipsa loquitur obviates the need for expert testimony in this matter. Appellant did not raise the issue of res ipsa loquitur before the trial court. Generally, a reviewing court will not consider any issue a party fails to raise before the trial court. State exrel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78, 81. However, even were we to consider it, appellant's res ipsa loquitur argument fails.
 {¶ 25} Although the doctrine of res ipsa loquitur may apply in certain medical malpractice actions, it is only a rule of evidence that allows the trier of fact to draw an inference of negligence from the facts presented. Johnson v. Hammond (1988),47 Ohio App.3d 125, 127.
The doctrine of res ipsa loquitur does not relieve the plaintiff in a medical malpractice case of the burden of presenting expert medical testimony on the requisite standard of care and skill. The plaintiff must present evidence to show that the injury would not have occurred in the ordinary course of events if ordinary care had been observed before an instruction of res ipsa loquitur would be justified. * * *
Johnson at syllabus. Thus, the doctrine of res ipsa loquitur does not excuse appellant's failure to present expert testimony on the requisite standard of care.
 {¶ 26} Because appellees met their initial burden under Civ.R. 56 and appellant failed to come forward with competent evidence demonstrating a genuine issue of material fact for trial, we conclude that the trial court properly granted summary judgment in appellees' favor. Therefore, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown, P.J., and McGrath, J., concur.
[1] This was a re-filed action. Appellant initially filed her claims against these defendants on February 23, 2001, in Franklin C.P. No. 01CVH2-1868, which appellant voluntarily dismissed on May 31, 2002, pursuant to Civ.R. 41(A).
[2] The trial court previously entered summary judgment in favor of defendant William Wallace, M.D., on November 6, 2003. This court dismissed appellant's appeal as to Dr. Wallace on April 12, 2005.