[Cite as *Anderson v. Eli Lilly & Co.*, 2015-Ohio-5239.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Dwight D. Anderson et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 15AP-479 |
| v. | : | (C.P.C. No. 10 CV 14682) |
| Eli Lilly & Company et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 15, 2015

*Abroms Law Office*, and *Hillard M. Abroms*, for appellants.

*Freund, Freeze & Arnold, Mark L. Schumacher* and *Sandra R. McIntosh*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Dwight and Melody Anderson are appealing from the directed verdict granted in their trial involving allegations of professional negligence. They assign four errors for our consideration:

> I. Under the common knowledge exception, the jurors can infer Defendants were negligent to prescribe a drug to a patient with liver disease without expert testimony, when the FDA label expressly states the drug is contraindicated in liver disease.
>
> II. Expert testimony is not needed to establish Defendants breached their duty to inform Plaintiff of the risks of taking a drug contraindicated in liver disease, because a patient's right to be informed of the risks of medical treatment is determined

by a reasonable patient standard, not a reasonable physician standard.

III. The report of Michelle Inkster, M.D. is sufficient to establish the negligence of the Defendants.

IV. Plaintiff could have called either or both of the Defendants to testify as to the standard of care and the issue of liability.

{¶ 2}  Dwight Anderson suffers from Hepatitis C.  His family physician prescribed Cymbalta for him. Cymbalta now has a warning which indicates that it may be contraindicated for persons with chronic liver disease.

{¶ 3}  The Cymbalta provided Dwight Anderson relief from his back pain and depression, but soon other serious medical conditions arose.  After he was hospitalized locally and received no definitive diagnosis for his new medical problems, the Andersons went to the Cleveland Clinic for further diagnosis and treatment.  A physician at the Cleveland Clinic, Michelle Inkster, M.D., felt that the Cymbalta was the cause of the new problems and advised Dwight Anderson's treating physician in the Columbus area that he should be weaned off the Cymbalta, which occurred.

{¶ 4}  The Andersons subsequently filed a claim for professional negligence against Jeffrey Hunter, D.O., and Ahmed Ghany, M.D.  Dr. Hunter had prescribed the Cymbalta in the first place.  Dr. Ghany had not terminated the prescription when he consulted with Dwight Anderson during his local hospitalization.

{¶ 5}  Counsel for the Andersons could not find a physician who would testify that either Dr. Hunter or Dr. Ghany had been guilty of professional negligence.  Still, counsel attempted to go to trial.

{¶ 6}  During opening statement, counsel for the Andersons acknowledged that he would have no medical doctor as an expert to testify either as to the issues of professional negligence or as to proximate cause of any injury caused by the alleged negligence. Counsel for the defendant made a motion for a directed verdict as this was a medical claim defined by R.C. 2305.113(E)(3) and there was no physician that would be called to testify as to any deviation from accepted standards of care.  As a result, the trial court judge sustained the motion for a directed verdict after opening statement, but allowed counsel to amend or amplify the opening statement provided in open court.  The content

of the opening statement was not amended or modified and counsel confirmed, to the trial court, that they were not calling a doctor as an expert. The motion for directed verdict was sustained and the Andersons timely appealed.

{¶ 7} Counsel for the Andersons has since indicated that the defendant's doctors could testify as to the standard of care on cross-examination, but counsel did not proffer the testimony of either Dr. Hunter or Dr. Ghany to the trial court or modify his opening statement to include allegations that either or both of the doctors would testify about presumed professional negligence. In their discovery depositions, the doctors did not indicate they felt they had been negligent.

{¶ 8} According to Civ.R. 50(A), a motion for directed verdict may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence. Civ.R. 50(A)(1). " '*A trial court should exercise great caution* in sustaining a motion for a directed verdict on the opening statement of counsel; it must be clear that all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense, *and the statement must be liberally construed in favor of the party against whom the motion has been made.*' " *Parrish v. Jones*, 138 Ohio St.3d 23, 2013-Ohio-5224, ¶ 25 (emphasis sic), quoting *Brinkmoeller v. Wilson*, 41 Ohio St.2d 223, 225 (1975).

{¶ 9} A trial court that rules on a motion for directed verdict following an opening statement is not required to consider the allegations contained in the pleadings but may do so to liberally construe the opening statement in favor of the party against whom the motion is made. *Parrish v. Jones*, 138 Ohio St.3d 23, 2013-Ohio-5224, ¶ 1. "A trial court may grant a motion for directed verdict made at the close of a party's opening statement only when that statement indicates that the party will be unable to sustain its cause of action or defense at trial." *Id.*at syllabus. "[T]he court must give the party against whom the motion is made the benefit of the doubt" and such motions should only be granted in rare instances. *Id.* at ¶ 33-34. "[H]owever, a party cannot sabotage its own case during opening statement and expect to prevail against a motion for directed verdict." *Id.* at ¶ 34.

{¶ 10} "Because a directed verdict tests only the sufficiency of the evidence, it presents a question of law that appellate courts review de novo." *Jarupan v. Hanna*, 173

Ohio App.3d 284, 2007-Ohio-5081, ¶ 8 (10th Dist.), citing *Groob v. Keybank*, 108 Ohio St.3d 348, 2006-Ohio-1189, ¶ 14.

### Common Knowledge Exception

{¶ 11} The first assignment of error argues that under the common knowledge exception, the jurors can infer the defendant doctors were negligent to prescribe a drug to a patient with liver disease without expert testimony, when the Food and Drug Administration label expressly states the drug is contraindicated in liver disease.

{¶ 12} The Supreme Court of Ohio has clearly set forth the standard in which to prove medical malpractice:

> In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things.

*Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976) paragraph one of the syllabus.

{¶ 13} " 'Proof of malpractice, in effect, requires two evidentiary steps: evidence as to the recognized standard of the medical community in the particular kind of case, and a showing that the physician in question negligently departed from this standard in his treatment of plaintiff.' " *Id.* at 131, quoting *Davis v. Virginian Ry. Co.*, 361 U.S. 354, 357 (1960). "Proof of the recognized standards must necessarily be provided through expert testimony." *Bruni* at 131-32. That expert must explain what a physician of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances. *Stanley v. The Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP-999, 2013-Ohio-5140, ¶ 19, citing *Bruni.*

{¶ 14} "[E]xpert testimony is unnecessary when 'the lack of skill or care of the physician * * * is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it[.]' " *Rhoads v.*

*Brown*, 4th Dist. No. 09CA18, 2010-Ohio-3898, ¶ 32, quoting *Bruni* at 130. If a plaintiff's claims are well within the comprehension of laypersons and require only common knowledge and experience to understand them, then expert testimony is not required to prove them. *See Bruni* at 130. Under the common knowledge exception, "matters of common knowledge and experience, subjects which are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert opinion testimony." *Ramage v. Central Ohio Emergency Serv., Inc.*, 64 Ohio St.3d 97, 103 (1992).

{¶ 15} A claim of negligence rather than medical malpractice that relies on the common knowledge exception sound in ordinary negligence and does not invoke specialized elements of a professional malpractice claim. *See Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 505, 506 (1964). "Such cases involve claimed negligence in a medical context that does not rely upon a lapse in the professional skills and judgment of medical personnel, but relates to actionable conduct that would lie within the common knowledge of and experience of a layperson." *Franks v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-442, 2013-Ohio-1519, ¶ 8, citing *Jones.* Examples of such conduct would include gross inattention or miscommunication with a patient. *Cunningham v. Children's Hosp.*, 10th Dist. No. 05AP-69, 2005-Ohio-4284, ¶ 1.

{¶ 16} A plaintiff must, however, present evidence when the "inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill." *Jones* at paragraph one of the syllabus. "The common knowledge exception has a limited scope in a world of increasing medical complexity." *Cunningham* at ¶ 20.

{¶ 17} Turning to the question in this case of whether the decision to prescribe Cymbalta falls with in the common knowledge exception, even a prescription medication which involves some risks to a patient may also have some benefit for the patient. The FDA warning which is provided with medication does not automatically mean that no patient subject to the warnings should use the medication. A physician has to weigh benefits versus risks. The testimony of a licensed physician is needed to determine that a treating physician's conduct falls below the standard for medical care in the community. The mere fact that a physician prescribed a medication which arguably was

contraindicated in certain circumstances does not in and of itself make the treating physician guilty of professional negligence.

{¶ 18} The typical juror cannot know when a prescription medication is not to be prescribed because the typical juror cannot know how to weigh the benefits versus the risks. This does not make the trial judge's ruling after opening statement an error.

{¶ 19} The first assignment of error is overruled.

## Informed Consent

{¶ 20} We also disagree with the assertion in the second assignment of error that expert testimony is not required in this case to raise the issue of informed consent. The Supreme Court of Ohio adopted the reasonable-patient standard in setting forth the elements of a cause of action for a physician's failure to obtain informed consent:

> The tort of lack of informed consent is established when:
>
> (a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;
>
> (b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and
>
> (c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy.

*Nickell v. Gonzalez*, 17 Ohio St.3d 136, 139 (1985). "Although the scope of disclosure is measured by information a reasonable patient would need to know in order to make an informed and intelligent decision, the physician need not disclose every conceivable risk." *White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, ¶ 33.

{¶ 21} "In the context of a claim for lack of informed consent, '[e]xpert testimony is necessary to establish the material risks and other pertinent information regarding the treatment or procedure.' " *White* at ¶ 35, quoting *Univ. of Maryland Med. Sys. Corp. v. Waldt*, 411 Md. 207 (2009). We have also previously found that expert testimony is required in informed consent cases. *See, e.g., Ullmann v. Duffus,* 10th Dist. No. 05AP-

299, 2005-Ohio-6060, ¶ 28 (in a lack of informed consent action, expert testimony would be required to establish what claimed undisclosed material risks and dangers are, and, if disputed, which are issues beyond the knowledge of the layperson); *Fairand v. Urology Surgeons, Inc.*, 10th Dist. No. 05AP-1066, 2006-Ohio-2266, ¶ 9; *Fernandez v. Ohio State Pain Control Ctr.*, 10th Dist. No. 03AP-1018, 2004-Ohio-6713, ¶ 14-15. Expert testimony has been required in informed consent cases involving the prescribing drugs. *Freed v. Burrows*, 11th Dist. No. 3860, (Dec. 4, 1987) (expert medical testimony was required to indicate negligence in the type and/or amount of drugs prescribed); *Klein v. Biscup*, 109 Ohio App.3d 855, 864 (8th Dist.1996) (the decision whether or not to use a drug for an off-label purpose is a matter of medical judgment not of regulatory approval, failure to disclose FDA status does not raise a material issue of fact as to informed consent).

{¶ 22} Cymbalta does in certain cases help relieve depression. Cymbalta carries some risks, as do all medications. Expert testimony is required to support an allegation that a treating or consulting physician did not tell the patient enough about the medication being prescribed.

{¶ 23} The second assignment of error is overruled.

**Defendants Would Not Testify They Violated the Standard of Care**

{¶ 24} The third assignment of error argues the report of Michelle Inkster, M.D. is sufficient to establish the negligence of the defendants with the testimony of Dr. Hunter. The Andersons claim the opinion of Dr. Inkster might be admissible hearsay. It would be offered not to prove the truth of the matter asserted, but that the appellee Dr. Hunter received, read, and agreed with and then followed the recommendations. Dr. Hunter would then testify to his medical diagnosis and be questioned as to why he immediately weaned Dwight Anderson off the Cymbalta after receiving that information.

{¶ 25} Michelle Inkster, M.D.'s letter recommending that the Cymbalta be discontinued is not a document accusing Dr. Hunter or Dr. Ghany of medical malpractice. The letter could be viewed as nothing more than a recommendation that the medication be discontinued as a way of ruling it out as a possible cause of Dwight Anderson's additional medical problems. The letter clearly would not qualify as the requisite medical expertise testimony to establish medical malpractice. Further, the letter, in and of itself, was not admissible for a variety of reasons, including the requirement of Ohio law setting

stringent standards for a physician who testifies about professional negligence. Once again the Andersons attempt to argue that the defendant physicians would not only provide the standard for medical care, but admit themselves that they did not follow it in open court.

{¶ 26} The third assignment of error is overruled.

{¶ 27} The fourth assignment of error argues again that the Andersons could have called either or both of the appellees to testify as to the standard of care and the issue of liability. The Andersons argue following *Parrish*, that "[o]nly if the opening statement shows that a party is completely unable to sustain a cause of action should the court take the case away from the jury by directing a verdict." *Parrish* at 32. The Andersons state a cause of action could be sustained when the defendants were on cross-examination.

{¶ 28} As indicated earlier, nothing in the record before us indicates whether Dr. Hunter or Dr. Ghany were going to testify that they had violated the standard of medical care. Further, this allegation was not placed before the trial court judge at the time the judge was evaluating the opening statement given in the case.

{¶ 29} The fourth assignment of error is overruled.

{¶ 30} In summary, the trial court judge did not err in granting a directed verdict. The assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____