RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0326p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

1ST SOURCE BANK,
                *Plaintiff-Appellant,*

      *v.*

WILSON BANK & TRUST; TRANSCAPITAL &
LEASING, INC.; PINNACLE BANK,
                *Defendants-Appellees.*

No. 13-5088

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:11-cv-00410—Todd J. Campbell, District Judge.

Decided and Filed: November 7, 2013

Before: KEITH and SUTTON, Circuit Judges; BLACK, District Judge[*]

_____

## COUNSEL

**ON BRIEF:** Wilson C. Von Kessler II, MARKEL & MAJOR, Chattanooga, Tennessee, for Appellant. T. Price Thompson III, David B. Foutch, ROCHELLE, MCCULLOCH & AULDS, PLLC, Lebanon, Tennessee, for Appellee Wilson. Roy C. DeSha, Jr., DESHA/WATSON, PLLC, Nashville, Tennessee, for Appellee TransCapital. Scott C. Williams, RUDY, WOOD, WINSTEAD, WILLIAMS & HARDIN, PLLC, Nashville, Tennessee, for Appellee Pinnacle.

_____

## OPINION

_____

DAMON J. KEITH, Circuit Judge. This appeal presents a single question of first impression under Tennessee law: whether the term "proceeds" as used in a company's

_____

[*]The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

financing statement includes its accounts receivable. The district court found that it does not. For the reasons set forth below, we **AFFIRM**.

## I. BACKGROUND

The uncontroverted facts in this case are as follows. Beginning in late 2004, 1st Source Bank ("1st Source") entered into a series of secured transactions with K & K Trucking and J.E.A. Leasing (collectively "Debtors") for the sale or lease of certain tractors and trailers. The parties executed security agreements that granted 1st Source a security interest in, *inter alia*, Debtors' tractors and/or trailers, accounts, and in the proceeds from the agreed-upon collateral. In connection with these security agreements, 1st Source filed financing statements pursuant to Tennessee law. The relevant financing statements identified the collateral, in relevant part, as the specified tractors/and or trailers, and "all proceeds thereof, including rental and/or lease receipts." Notably, however, 1st Source's financing statements did not include the terms "accounts," "accounts receivable," or any other similar language in the description of the collateral.

Around the same time period—but after 1st Source filed its financing statements—Defendants Wilson Bank & Trust, Pinnacle Bank, and TransCapital & Leasing, Inc. also entered into certain secured transactions with Debtors. Defendants properly filed their financing statements with the State, which specifically provided that each of the Defendants had a security interest in "all ***accounts receivable*** now outstanding or hereafter arising."

In late 2009, Debtors defaulted on their loans. While 1st Source undertook repossession of the collateral securing the agreements, Defendants took possession of the collateral in which they had a first priority security interest, namely Debtors' accounts receivable. 1st Source contends that it possessed a perfected security interest—and thus had first priority—in Debtors' accounts, arguing that the term "and all proceeds thereof" in its financing statements includes Debtors' accounts receivable. The district court granted Defendants' motions for summary judgment, finding that 1st Source's financing statements were not sufficient to put Defendants on notice that 1st

Source claimed a security interest in Debtors' accounts receivable, and holding as a matter of Tennessee law that the term "proceeds," as used in a company's financing statement, does not include its accounts receivable.

## II. STANDARD OF REVIEW

We review *de novo* the district court's decision to grant Defendants' motion for summary judgment. *Layne v. Bank One, Ky., N.A.*, 395 F.3d 271, 275 (6th Cir. 2005). In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 735 (6th Cir. 2001). To prevail, the movant must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. ANALYSIS

The priority of the security interests in dispute in this case is governed by Chapter 9 of Tennessee's Commercial Code ("Chapter 9"). Tenn. Code Ann. §§ 47-9-101 to 47-9-710. That 1st Source took the proper steps necessary for its security interest to attach to Debtors' accounts is undisputed. Attachment occurs at the instant of creation of an enforceable security interest. *See id.* at § 47–9–203. Rather, the dispute in this case turns on whether or not 1st Source properly *perfected* its security interest in Debtors' accounts.

In order to perfect a security interest, the secured creditor must file a financing statement that describes the collateral to be covered by the financing statement. *Id.* at § 47-9-502(a)(3). Pursuant to Chapter 9, a perfected security interest prevails over an unperfected security interest, even where the unperfected interest was obtained later in time. *Id.* at § 47-9-322.

        *A)     1st Source's Financing Statements were not Sufficient to put Defendants on Notice that 1st Source Claimed a Security Interest in Debtors' Accounts.*

The purpose of notice in a financing statement is to indicate to third parties "that a person may have a security interest in the collateral indicated." *Id.* at § 47-9-502 Official Comment 2. Although "minor mistakes . . . on financing statements are not fatal," a financing statement must be "sufficiently accurate such that third parties are put on notice." *In re Snelson*, 330 B.R. 643, 652 (Bankr. E.D. Tenn. 2005) (internal quotation marks omitted); *see also Metro Const. Co., LLC v. Sim Attractions, LLC*, 2009 WL 1605558, at *8 (Tenn. Ct. App. June 9, 2009) ("A financing statement failing to convey the information which a reasonably diligent third person requires to identify potential competing security interests in the debtor's assets is 'seriously misleading.'"); *Lehigh Press, Inc. v. Nat'l Bank of Georgia*, 193 Ga. App. 888, 891, 389 S.E.2d 376, 378 (1989) ("[The] failure to identify account as a type of collateral intended to be covered by the financing statement does not place third parties on notice that a security interest was taken in accounts receivable.").

As the Ninth Circuit has explained, only collateral that is adequately described in the financing statement will be perfected—even where the security agreement confers a security interest in other collateral.

> A financing statement, if more limited in scope than the security agreement which it perfects, limits the collateral in which the creditor has a perfected interest to that description *as against third party creditors and a trustee in bankruptcy.* The purpose of a financing statement is to give notice of the type of collateral that may be subject to a security interest and that purpose is subverted if a third party cannot reasonably ascertain from the financing statement the type of collateral as distinguished from the particular items of collateral which may be subject to a particular security interest.

*Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 921 (9th Cir. 1988) (emphasis in original).

Here, 1st Source's financing statements identified specific pieces of equipment and several types of collateral, "together with all present and future attachments, accessories, replacement parts, repairs, additions and exchanges thereto and therefore, documents and certificates of title, ownership or origin, with respect to the equipment, and all proceeds thereof, including rental and/or lease receipts."  However, the description of collateral in Plaintiff's financing statements did not list "accounts" or "accounts receivable."  Pursuant to the maxim, *expressio unius est exclusio alterius,* to which our courts adhere, *see State v. Hawkins*, 811 S.W.2d 79, 82 (Tenn. 1991) ("the mention of one subject in a statute means the exclusion of other subjects that are not mentioned"), the limiting language in 1st Source's financing statements identified the only items that were subject to the security interest.  Defendants had no reason to know or expect that 1st Source also claimed a security interest in Debtor's accounts receivable.

> B)    *Income Generated from the use of Collateral does not Constitute "Proceeds" as Defined under Chapter 9.*

1st Source attempts to cure its omission of the term "accounts" or "accounts receivable" from its financing statement by arguing that the phrase "all proceeds thereof" in its financing statements includes Debtors' accounts receivable.  We disagree.

A foundational rule of statutory construction is to give effect to the intent of the Legislature by giving words their "natural and ordinary" meaning. *In re Estate of Trigg*, 368 S.W.3d 483, 490 (Tenn. 2012).  Where two statutory provisions potentially conflict, "a specific statutory provision controls over a more general statutory provision." *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998); *see also In re American Cartage, Inc.*, 2009 WL 4780972, at *5-6 (Bankr. D. Mass. Dec. 11, 2009) (holding that the more specific definition of a type of collateral under the UCC will govern over "the more general description of proceeds").

Here, Chapter 9 provides a comprehensive definition of the term "proceeds":

(A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral;
(B) whatever is collected on, or distributed on account of, collateral;

(C) rights arising out of collateral;
(D) to the extent of the value of collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the collateral; or
(E) to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral.

Tenn. Code Ann. § 47-9-102(a)(64).

1st Source contends that its right to Debtors' accounts receivable arises pursuant to sections (B) and (C) of the definitions of proceeds. Although the statutory definition of the term "proceeds" appears admittedly broad, accepting Plaintiff's interpretation of the statute would render the term "accounts"—a category defined separately in Chapter 9—meaningless. *See* Tenn. Code Ann. § 47-9-102(a)(2). Because we are required "to construe statutes, whenever possible, in a way which gives meaning to every portion of the statute," *DeLaney v. Thompson*, 982 S.W.2d 857, 860 (Tenn. 1998), we decline to expand the definition of the general term, "proceeds," in such a way that it would subsume the specific term, "accounts."

Moreover, the drafters of the UCC sought to cabin the potentially broad definition of "proceeds" in the Commentary to the Section, explaining that "proceeds" does not refer to "income generated from the debtor's own use and possession of goods" or to situations where there was "no disposition of the goods by the security lease." PEB Commentary No. 8 § 9-306(1); *see also* 9 Anderson U.C.C. § 9-306:24 (3d. ed.) ("Money obtained by the use of the collateral does not constitute proceeds."). As the district court aptly summarized, in order for rights to "arise out of collateral," they must have been obtained as a result of some loss or dispossession of the party's interest in that collateral, not simply by its use.

> If fruits and products from the use of collateral were treated as proceeds, every creditor with a security interest in equipment would have a security interest in all items produced from the equipment as well as the revenues earned by the equipment." The Court will not extend the meaning of "proceeds" to such an extent.

R. 128 at 6. (quoting *CLC Equip. Co. v. Brewer*, 139 F.3d 543, 546 (5th Cir. 1998)).

Cases interpreting the UCC and the associated state statutes in other jurisdictions likewise uniformly support the proposition that revenues earned through the use of collateral are not proceeds. *See, e.g.*, *In re Gamma Ctr., Inc.*, 489 B.R. 688, 696 (Bankr. N.D. Ohio 2013) ("The Bank cites no authority that supports its position, and the court is not persuaded, that accounts receivable or funds collected thereon as the result of using equipment collateral constitute proceeds under the UCC."); *In re Las Vegas Monorail Co.*, 429 B.R. 317, 333-35 (Bankr. D. Nev. 2010) (holding that the term "proceeds" does not include business income generated from customer fares as the fares are not "collected on, or distributed on account of" the franchise agreement, nor do they "aris[ing] out of the collateral"); *In re Stevens*, 307 B.R. 124, 131 (Bankr. E.D. Ark. 2004) (government agricultural payments do not fall under the statutory definition of "proceeds"). Accordingly, we find that the term "proceeds," as used in 1st Source's financing statements, does not include Debtors' accounts receivable.

> C)    *The District Court's Erroneous Conclusion that that Trucks and Trailers are not "Goods" under the Tennessee Commercial Code is Irrelevant to this Case.*

Finally, 1st Source asks this Court to reverse the district court's decision because it erroneously stated that tractors and trailers are not "goods" under the Tennessee Commercial Code. Chapter 9 of the Code clearly defines "Goods" as "all things that are movable when a security interest attaches." Tenn. Code Ann. § 47-9-102(44). That misstatement is immaterial to this case, however, because although a purchase-money security interest ("PMSI") in *consumer* goods is automatically perfected on attachment, the tractors and trailers at issue here were used for *commercial* purposes. As such, the special PMSI perfection rules are irrelevant to this case.

## IV. CONCLUSION

In sum, the financing statements filed by 1st Source were insufficient to put Defendants on notice that 1st Source claimed to have a security interest in Debtors' accounts receivable. Accordingly, 1st Source's unperfected security interests in

Debtors' accounts are subordinate to Defendants' perfected security interests in the accounts.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.