NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0222n.06

No. 13-5456

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| WILEY M. SMITH, | ) | **FILED** |
|  | ) | Mar 25, 2014 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| MAYOR WILLARD MCBURNEY, et al., | ) |  |
|  | ) | ON APPEAL FROM THE |
| Defendants, | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| WHITLEY COUNTY, KENTUCKY; KENNETH | ) | DISTRICT OF KENTUCKY |
| MOBLEY, in his Official Capacity as Whitley | ) |  |
| County Jailer, and in his Individual Capacity, | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |
|  | ) |  |
|  | ) |  |

Before: KEITH, COOK, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Wiley Smith appeals the district court's dismissal of some of his § 1983 claims, which arose after he drove his vehicle while severely intoxicated. We affirm.

On the evening of April 2, 2010, someone called the police to report a car swerving all over the road. Corbin County Police Officer Rick Baker responded to the call and stopped the car. Inside was Wiley Smith—eyes bloodshot, speech slurred.

Baker told Smith that he was under arrest and that Smith needed to walk to the back of the police car. Smith says that—"before [he] could turn around"—Baker tased and pepper-sprayed him. Smith then says that Baker and another officer tried to shove him into the police

car head first and repeatedly slammed the car's door on his protruded leg. Baker says that Smith pretended to faint and fell near the road—where he lay uncooperative. According to Baker, the officers struggled to move Smith (who was obese) and tased him to get him to move. They were eventually able to move Smith away from the road.

Baker thought that the jail would not admit Smith in this state, so he called an ambulance to take Smith to the hospital. (Smith does not recall an ambulance ride, and says he went to jail before the hospital.) Smith arrived at the hospital with a blood-alcohol level more than five times the legal limit. A doctor diagnosed Smith with "alcohol intoxication," "obesity," "chronic back pain," and "diabetes mellitus." The doctor also noted "chronic leg pain[,]" but "[n]ormal gait and station[.]" After a few hours, Smith was cleared and released. At this point, Smith told Baker that he could not walk and needed a wheelchair.

Baker then took Smith to the Whitley County Detention Center. The jail refused to admit Smith because his blood pressure was too high. Baker says he called his supervisor and took Smith back to the hospital to get him recleared (though there are no hospital records of this visit). Meanwhile, Baker's supervisor tried to persuade the jail to admit Smith.

A little after midnight, Baker and Smith returned to the jail. This time, the jail admitted Smith. His paperwork listed the following medical problems: "diabetic high blood pressure post dramatic [sic] stress syndrome." The paperwork also indicated that Smith had no "visible signs of trauma, pain, bleeding, or infection[.]" That afternoon, Verna Halcomb—a nurse for the jail—examined Smith and saw "two very large swollen ankles[.]" She noted that Smith had a "Possible FX [fracture] Rt [right] ankle[,]" that he required immediate medical attention, and that "family will transport to hospital." The next day, Smith was picked up by a friend and released.

But Smith chose not to go to a hospital for another eight days. He explained that he had not gone sooner because he "did not want to be detoxed in the hospital[.]" Smith's leg was indeed badly broken, however; and two days later, he underwent surgery. He remained in the hospital for over a year until the leg ultimately was amputated.

Before the amputation, Smith brought this lawsuit pursuant to 42 U.S.C. § 1983. He raised a number of claims against the City of Corbin (*i.e.*, the police department), Whitley County (*i.e.*, the jail), and numerous employees of each. The claims centered on the officers' alleged use of force during the arrest and inadequate medical care while in jail. The district court granted summary judgment for all the defendants on all the claims except those against the police officers for excessive force and assault and battery. Thereafter, the parties settled those two claims. Smith now appeals the dismissal of his other claims.

We review de novo the district court's grant of summary judgment. *1st Source Bank v. Wilson Bank & Trust*, 735 F.3d 500, 502 (6th Cir. 2013). Smith's first argument is that the district court mistakenly dismissed his claim that Whitley County was deliberately indifferent to his medical needs in violation of the Fourteenth Amendment. His second argument is that the district court mistakenly dismissed his claim that Whitley County failed to train the jail's employees to provide adequate medical care. These two arguments are actually one: To establish municipal liability for a constitutional violation—such as deliberate indifference to one's medical needs—a plaintiff must show that municipal employees acted pursuant to government "policy or custom[.]" *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A failure to train is a type of "policy or custom"—and the only one Smith offers. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-90 (1989).

To establish municipal liability on this basis, a plaintiff must point to "prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (quotation marks and alterations omitted). But Smith cites no prior instances of inadequate medical care at the jail other than his own. Thus, his deliberate-indifference claim against the county fails.

Smith's third argument is that the district court mistakenly dismissed his deliberate-indifference claim against Kenneth Mobley in his personal capacity. Mobley ran the Whitley County Detention Center. A supervisory official such as Mobley is not liable under § 1983 in his personal capacity unless he "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quotation marks omitted). Mobley testified that he never saw Wiley Smith and did not learn about him until after Smith had been released. Smith says that, because parts of Mobley's deposition testimony are in the present and future tenses, he knew about the allegedly inadequate medical care. For instance, Mobley said "I probably went to the nurse and said what is the deal with him. She's probably said . . . they're going to bond him out." But even so, "simple awareness of [] misconduct does not lead to supervisory liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). Smith offers no evidence that Mobley encouraged the allegedly inadequate medical care, so this claim fails as well.

The district court's judgment is affirmed.