**Fassil TSEGAYE, Plaintiff–Appellant,**

v.

**AMALGAMATED TRANSIT UNION, 1235, Defendant–Appellee.**

**No. 15–6102.**

United States Court of Appeals, Sixth Circuit.

April 27, 2016.

---

BEFORE: KETHLEDGE and WHITE, Circuit Judges; COHN, District Judge.*

COHN, District Judge.

This is a labor case. Plaintiff–Appellant Fassil Tsegaye ("Tsegaye") appeals from the district court's grant of summary judgment to defendant-appellee Amalgamated Transit Union, 1235 ("ATU") on the grounds that Tsegaye did not establish that ATU breached its duty of fair representation in failing to arbitrate his grievance following his termination of employment, in violation of 29 U.S.C. § 159. We AFFIRM.

## I.

Tsegaye worked as a bus driver for the Metropolitan Nashville–Davidson County Transit Authority ("MTA"), the public transit arm of the Davidson Transit Organization ("DTO"). Tsegaye was a member of ATU, the union representing MTA employees. His employment was governed by a collective bargaining agreement that provides for a three-step grievance procedure culminating in arbitration.

The events that led to Tsegaye's termination occurred on Saturday, June 29,

* The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

2013. Tsegaye had an Android cell phone with him while he was driving the bus. One of his passengers reported to MTA that Tsegaye was using a cell phone while driving. MTA later received a second complaint from a passenger informing that Tsegaye was texting while driving. MTA has a "zero tolerance" policy forbidding bus drivers from using cell phones while driving.

MTA investigated the complaints, including reviewing video from the bus at the times in question. The video, which is not a part of the record, has been described as showing Tsegaye repeatedly looking down at an object on his lap, among other things.

As an initial step in the investigation, MTA official Charles Mitchell ("Mitchell") wrote to Tsegaye on July 3, 2013. Mitchell stated in the letter that he had reason to believe Tsegaye violated the policy against cell phones, as well as policies requiring bus drivers to wear seat belts and to stop at railroad crossings. The letter also stated that Tsegaye was suspended without pay and asked him to provide his side of the story. Tsegaye informed ATU's President, Larry Patton ("Patton"), of the letter.

To support his version of the events, Tsegaye provided copies of his cell phone records to both MTA and ATU, which he says show that he did not use his cell phone at the times in question. Tsegaye also went to the union office to review the cell phone records with Patton and other ATU officers.

Mitchell again wrote Tsegaye, expressing doubt as to the authenticity and accuracy of the records produced by Tsegaye, and asking him to either come to the MTA office and access his cell phone records there, or have Verizon send them directly to MTA. Patton and another ATU officer accompanied Tsegaye to a meeting at MTA's office. The meeting was not beneficial to Tsegaye; following the meeting, MTA terminated his employment.

The termination letter stated that, based on the video from the bus, MTA concluded that Tsegaye violated policy by (1) using an electronic device while operating a revenue vehicle while in motion; (2) failing to wear a seatbelt; (3) failing to move into the pull-off area to pick up passengers; (4) opening the front door while the bus was in motion; and (5) failing to make a complete stop at railroad tracks. While MTA terminated Tsegaye for the cell phone violation, it explained that the other violations would have resulted in discipline had he remained an employee.

MTA's letter of termination explained the factual basis for its decision and why it did not credit Tsegaye's version of events:

Despite your verbal and written denials of using and having an electronic device on your person while operating the revenue vehicle on June 29, 2013, DTO has determined that you had an electronic device in your lap while the revenue vehicle was in motion and the electronic device was powered on. Inasmuch as you repeatedly looked down and were accessing the electronic device, DTO has concluded that you were using the electronic device in violation of DTO's policies, procedures and reasonable expectations. Further, you failed to take advantage of PhoneBlox, which is a tool provided by DTO to deter individuals from using an electronic device while a revenue vehicle is in motion. Further yet, DTO's findings are consistent with the passenger complaints that DTO received, which prompted the initial investigation.

It is important to note that you claimed the brightness visible in your lap on the video was a reflection from the floor and

not an electronic device. DTO did not find merit to your verbal statement and, as a result, also concluded that you violated DTO's standards of honesty. Again, DTO could only discharge you once, but this would have been a separate and independent basis for discharge.

(RE 44–1, PageID # 289–90).

ATU filed a grievance with MTA over Tsegaye's termination. Patton, as President of ATU, advocated for Tsegaye during the grievance process. MTA denied the grievance in a letter from Mitchell to Patton dated August 6, 2013. This was step one in the grievance process.

Step two was a meeting with MTA at which Patton and Tsegaye were present. Following the meeting, MTA again denied the grievance.

Step three would have been arbitration. ATU members vote on whether to take a grievance to arbitration during a regular meeting. ATU's bylaws provide in part that "[t]he regular meetings of this Local Union shall be held on the (2nd) second Monday of each month at 10:30 A.M. and 7:00 P.M." (Bylaws art. III, § 1, RE 46–1, PageID # 338). According to Peter Baker, the current ATU president, ATU splits its meetings into two sessions so more members can attend. Under the bylaws, "[t]en (10) members in good standing shall constitute a quorum to transact business of the Local Union." (Bylaws art. III, § 2, RE 46–1, PageID # 339).

ATU held a meeting on Tsegaye's grievance and other business on October 14, 2013, with a morning session and an evening session. Tsegaye attended both sessions and spoke in support of his grievance. ATU played the video from Tsegaye's bus at both sessions. Members were also shown the letter from the passenger who accused Tsegaye of texting while driving. The members voted not to arbitrate Tsegaye's grievance. At the morning session, they voted five-to-two against arbitration. At the evening session, they voted six-to-three against arbitration. The combined vote for the two sessions was eleven-to-five against arbitration. As such, ATU did not pursue arbitration on Tsegaye's behalf.

Although Tsegaye could have appealed ATU's decision not to arbitrate to the international union, he did not. Instead, he filed this lawsuit claiming breach of the duty of fair representation. The parties filed cross motions for summary judgment. The district court granted ATU's motion and denied Tsegaye's motion, finding no triable issue on whether ATU breached its duty of fair representation.

## II.

We review a district court's grant of summary judgment *de novo*. *1st Source Bank v. Wilson Bank & Trust*, 735 F.3d 500, 502 (6th Cir.2013) (citation omitted). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the non-moving party." *Id.* (citation omitted). "To prevail, the movant must show 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(a)).

## III.

A plaintiff may prove breach of the duty of fair representation by showing that "the union's actions or omissions during the grievance process were arbitrary, discriminatory, or in bad faith." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir.2003) (citing *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). Arbitrariness, discrimination, and bad faith each provides a separate route by which a plaintiff may prove breach. *Id.* (citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir.1994)).

■ Tsegaye says that ATU acted arbitrarily by not going to arbitration. He says ATU gave "no rational explanation" for its decision or, at the very least that there is a genuine issue of material fact as to whether the ATU breached its duty. A union acts arbitrarily only if its conduct "is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int.'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (internal quotation marks and citation omitted). "[A] union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion;" however, a union does not breach its duty of fair representation merely by deciding that a particular grievance lacks sufficient merit to justify submission to arbitration. *Vaca,* 386 U.S. at 191–93, 87 S.Ct. 903.

Here, ATU did give a reason for not taking Tsegaye's grievance to arbitration: the members voted against arbitration after considering the evidence. The union must have "a rational basis for making its decision not to press on with [an employee's] grievance." *Poole v. Budd Co.,* 706 F.2d 181, 184 (6th Cir.1983). The members had a rational basis for voting as they did. The record shows that video was played at both sessions of the meeting. The members were also presented with a letter from one of the passengers complaining that Tsegaye was texting while driving. The members were also advised of the policy regarding the use of cell phones. While Tsegaye says that ATU did not keep records of why its members voted as they did, he cites no authority for this requirement. In light of the evidence presented to the members, the vote of the ATU members was neither irrational nor arbitrary. It certainly cannot be said to fall outside of a wide range of reasonableness. No reasonable juror could conclude otherwise.

Tsegaye contends without explanation that the cell phone records conclusively show he was not using a cell phone, and therefore ATU should have taken his grievance to arbitration. The district court correctly rejected this argument. Not only are there uses of a cell phone that would not appear in cell phone records, such as reading old texts or browsing the internet, the records are at best inconclusive as to whether Tsegaye used the phone or text functions of his cell phone while operating a bus. Moreover, although the union's duty includes undertaking a reasonable investigation, that duty "does not require [the] union to exhaust every theoretically available procedure simply on the demand of a union member." *St. Clair v. Local Union No. 515, Int.'l Bhd. of Teamsters,* 422 F.2d 128, 130 (6th Cir.1969) (internal citations omitted).

■ Tsegaye also seems to suggest that ATU breached its duty because fewer than ten members voted at each meeting session and therefore the vote lacked a quorum. Putting aside that this argument is not developed, it does not provide a ground for relief. We give "substantial deference" to a union's interpretation of its own voting rules. *See United Bhd. of Carpenters & Joiners of Am., Dresden Local No. 267 v. United Bhd. of Carpenters & Joiners of Am., S. Cent. Ohio Dist. Council,* 992 F.2d 1418, 1423 (6th Cir. 1993). Although ATU's bylaws provide that "regular meetings" will be held on the second Monday of each month at 10:30 A.M. and 7:00 P.M., which could mean that there are actually two separate meetings each month, ATU presented unrebutted testimony that the meetings are split into two sessions so that more members can attend. Under this reasonable interpretation, the vote at each session would be part of the same meeting, and a quorum would depend upon the total attendance at both sessions. Thus, in Tsegaye's case, there

were more than ten members present in total. Even assuming ATU misapplied its own rules, Tsegaye still cannot prevail. "The grievance processes cannot be expected to be error-free." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). It therefore cannot be said that the manner in which ATU conducted its voting was arbitrary.

As an alternative ground for affirming the district court, ATU says that Tsegaye did not exhaust his administrative remedies or show that exhaustion was futile. In light of our finding that Tsegaye cannot prevail on his fair representation claim as a matter of law, it is not necessary to consider the argument.

## IV.

For the reasons stated above, we AFFIRM.