[Cite as *Horn v. Cherian*, 2023-Ohio-931.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| TRAVIS HORN, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 111821 |
| v. | : | |
| NEIL CHERIAN, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED
IN PART AND REMANDED
**RELEASED AND JOURNALIZED:** March 23, 2023

Civil Appeal from the Lyndhurst Municipal Court
Case No. 22-CVI-00997

*Appearances:*

Travis Horn, *pro se.*

Bonezzi Switzer Polito & Hupp Co. L.P.A., Brian F. Lange
and Bret C. Perry, *for appellee.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant Travis Horn appeals the dismissal of his small claims complaint against defendant-appellee Dr. Neil Cherian. The trial court dismissed the complaint with prejudice under Civ.R. 12(B)(6) for lack of standing, lack of an affidavit of merit and for seeking nonrecoverable damages. For the

reasons that follow, we affirm the dismissal in part, reverse in part and remand the matter to the trial court.

{¶ 2} We affirm the dismissal to the extent the complaint asserts that Horn has an independent claim for malpractice and prays for damages attributable to legal expenses and court costs Horn allegedly incurred in a related lawsuit Horn initiated against Dr. Cherian's employer and others in the Cuyahoga County Court of Common Pleas. We reverse the dismissal as to Horn's derivative claims for loss of consortium and expenditures, but only to the extent that the trial court dismissed the complaint with prejudice.

## I.    Factual Background and Procedural History

{¶ 3} Travis Horn is married to Mary La Riccia ("La Riccia"), who was formerly a patient of Dr. Neil Cherian at the Cleveland Clinic.

{¶ 4} On May 17, 2022, Horn filed a small claims complaint in Lyndhurst Municipal Court — on a form provided by the municipal court — seeking $6,000 in damages from Dr. Cherian and alleging as follows:

> Dr. Cherian's negligent actions caused my wife to be removed from his care by third parties. As Dr. Cherian is the only practitioner of his medical subspecialty available to us, my wife has been left completely without medical care, which has forced us to endure a lengthy legal battle to cease this unlawful denial of care, thereby, incurring substantial undue cost and severe mental anguish.

{¶ 5} Dr. Cherian filed a motion to dismiss the complaint under Civ.R. 10(D) and 12(B)(6). Dr. Cherian argued that the complaint was subject to dismissal without prejudice because (1) Horn lacked standing, (2) Horn's complaint did not include an affidavit of merit and (3) to the extent Horn was requesting attorney fees

and litigation expenses from a previous case, the complaint failed to state a claim. Dr. Cherian attached several exhibits to the motion, those being court documents from a case Horn had previously filed against the Cleveland Clinic and others in the Cuyahoga County Court of Common Pleas.[1]

{¶ 6} Horn filed an opposition to the motion, in which he described his claim against Dr. Cherian in more detail, as follows:

> Dr. Cherian, in his role as the fiduciary in the [doctor-patient] relationship [between Dr. Cherian and La Riccia], directed and encouraged the communications that caused my wife to be removed from his care, and, therefore, bears responsibility for the content that

---

[1] Cuyahoga C.P. No. CV-20-941722. We note that the trial court did not indicate, in its opinion, whether it considered or excluded the court documents attached to and referenced in Dr. Cherian's motion to dismiss. "When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court," the Civil Rules provide that "the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56." Civ.R. 12(B). A trial court's failure to notify the parties that it is converting a motion to dismiss into a motion for summary judgment is reversible error. *E.g.*, *State ex rel. Boggs v. Springfield Local School Dist. Bd. of Edn.*, 72 Ohio St.3d 94, 96, 647 N.E.2d 788 (1995). "Whether or not the trial court expressly states in its decision, when a court considers matters outside the pleadings, it is converting a Civ.R. 12(B)(6) motion to dismiss to a Civ.R. 56 motion for summary judgment and must notify the parties." *Highfield v. Pietrykowski*, 6th Dist. Ottawa No. OT-16-008, 2016-Ohio-5695, ¶ 6 (Celebrezze, Keough, S. Gallagher, JJ., sitting by assignment). The trial court's reasoning here does not necessarily lead to the conclusion that it considered the documents attached to Dr. Cherian's complaint, because Horn specifically referred to his "lengthy legal battle" in the complaint. Moreover, a court can take judicial notice of appropriate matters in determining a Civ.R. 12(B)(6) motion without converting it to a motion for summary judgment. *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 10, citing *State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923, ¶ 26. In any event, we need not dwell on this issue because neither party argues on appeal that the trial court failed to comply with the requirements of Civ.R. 56. Instead, both parties contested the merits of the arguments presented by Dr. Cherian and the trial court's reasoning in dismissing the complaint for failure to state a claim. Therefore, the parties have waived any argument that the trial court improperly converted Dr. Cherian's motion to dismiss into a motion for summary judgment and we consider the merits of the appeal. *See Highfield* at ¶ 10.

was found to be objectionable, and, subsequently, for the financial burden I have had to endure to attempt to rectify the situation. * * *

Any layman would know that psychotherapeutic conversations should not be conducted over an unsecured medium, and that the fiduciary in a relationship bears the responsibility, particularly for actions they directed.

{¶ 7} The briefing makes clear that Horn is alleging that Dr. Cherian and La Riccia communicated with each other during the course of La Riccia's treatment through electronic messages exchanged over MyChart, a Cleveland Clinic online health management system. Horn alleges that the Cleveland Clinic found certain messages exchanged between Dr. Cherian and La Riccia to be inappropriate and terminated the doctor-patient relationship between them. Horn alleges that Dr. Cherian is ultimately responsible for that action and that Horn and La Riccia were damaged as a result.

{¶ 8} On July 15, 2022, the municipal court dismissed the complaint with prejudice "for failure to state a claim upon which relief can be granted based on the Plaintiff's lack of standing, the failure to submit an Affidavit of Merit, and the pursuit of unrecoverable damages." The court found that Horn's complaint "is alleging negligent actions of Dr. Cherian in the context of his relationship" with La Riccia, "seeks damages associated with other legal actions pursued by the Plaintiff to include court costs and potential legal fees" and "also appears to be pursuing mental distress damages." The court found that any actionable claim that may exist regarding any negligence of Dr. Cherian in his communications with La Riccia would belong to La Riccia only. Moreover, the court found that even if La Riccia had

asserted the claim, the complaint would be subject to dismissal for failure to include an affidavit of merit. Finally, the trial court held that "Plaintiff's pursuit of emotional distress or mental anguish damages is not within the jurisdiction of this Court" and "Ohio law does not allow for the pursuit of attorney fees and legal costs from other actions without any statutory or contractual mandate to support same."

{¶ 9} Horn then filed a document styled as an "objection to the court's decision," in which he asked the municipal court to reverse its decision dismissing his complaint. The trial court denied the request as moot.

{¶ 10} Horn appealed and raises the following assignments of error for review:

Assignment of Error 1:

The trial court's first error is holding that an affidavit of merit is required to validate my claim, which I maintain is more personal injury than a medical claim.

Assignment of Error 2:

Operating under the premise that my claim is medical, the trial court is also in error in its assertion that I do not have a claim because I did not have a relationship with Dr. Cherian.

Assignment of Error 3:

The trial court made a third error in determining that I can not file a claim for emotional damage.

Assignment of Error 4:

The trial court's fourth error is in determining that I can't recover my legal expenses "without any statutory or contractual mandate[,"] citing *Franklin v. Neighbors Org. for Action in Hous.*, 8th Dist. [Cuyahoga] No. 68966, 1996 Ohio App. LEXIS 1575 [(Apr. 18, 1996)].

Assignment of Error 5:

The trial court has further erred in dismissing my complaint with prejudice.

Assignment of Error 6:

The trial court also erred by denying my objection as moot.

## II. Law and Analysis

### A. Standard of Review

{¶ 11} We review rulings on Civ.R. 12(B)(6) motions to dismiss under a de novo standard. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party." (Citation omitted.) *NorthPoint Properties, Inc. v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). "For a trial court to grant a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling [the plaintiff] to relief.'" *Graham v. Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 47 (8th Dist.), quoting *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2011-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.). A court's factual review is generally confined to the four corners of the complaint. *See, e.g.*, *Dabney v. Metro Appraisal Group, Inc.*, 8th Dist. Cuyahoga No. 106917, 2018-Ohio-4601, ¶ 15.

{¶ 12} This is the standard of review applicable to Civ.R. 12(B)(6) motions targeting small claims complaints — *e.g.*, *Sweeney v. Pfan*, 5th Dist. Delaware No.

19 CAG 04 0030, 2019-Ohio-4605, ¶ 12; *Larson v. Canton City Util.*, 5th Dist. Stark No. 2019CA00041, 2019-Ohio-5400, ¶ 16–17 — even though small claims are required to be presented in a "concise, nontechnical form." R.C. 1925.04(B). "The legislative intent in establishing the small claims court division was clearly not to require plaintiffs to file complaints similar to those filed by licensed attorneys." *Wagner v. Dambrosio*, 8th Dist. Cuyahoga No. 52142, 1986 Ohio App. LEXIS 8976, 3 (Nov. 6, 1986). Moreover, one of the goals of the small claims division is "to provide for the efficient, informal and inexpensive adjudication of small claims," and thus "pleadings are kept to a minimum." *See Akaki Tikaradze v. Kenwood Gardens Apts.*, 6th Dist. Lucas No. L-11-1217, 2012-Ohio-3735, ¶ 5. For example, the small-claims-complaint form that the Lyndhurst Municipal Court offers to litigants on its website provides only four lines for a plaintiff's use in describing their claims.[2]

{¶ 13} In practice, then, a Civ.R. 12(B)(6) motion to dismiss a small claims complaint often asks a trial court to conclude, based only on a short paragraph, that it is "beyond doubt" the plaintiff can prove "no set of facts" entitling them to relief. This is a high bar, for "'[a]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Woods v. Sharkin*, 2022-Ohio-1949, 192 N.E.3d 1174, ¶ 29 (8th Dist.), quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143,

---

[2] Lyndhurst Municipal Court, *Filing Your Claim*, navigate to https://www.lyndhurstmunicipalcourt.org/about/how-to-sue/ and click "Fill out the form carefully and completely and file it with the Clerk of Court." (accessed Feb. 27, 2023).

145, 573 N.E.2d 1063 (1991). A court "may not dismiss a complaint under Civ.R. 12(B)(6) merely because it doubts the plaintiff will prevail." *Woods* at ¶ 28, citing *Bono v. McCutcheon*, 159 Ohio App.3d 571, 2005-Ohio-299, 824 N.E.2d 1013, ¶ 8 (2d Dist.).

{¶ 14} While the bar is high, it is not insurmountable. Courts have held that the application of Civ.R. 12(B)(6) to small claims complaints is consistent with R.C. Chapter 1925 and have affirmed or ordered the dismissal of small claims complaints under certain circumstances. *See Fleming v. Whitaker*, 5th Dist. Knox No. 12-CA-19, 2013-Ohio-2418 (affirming dismissal of small claims complaint where the injured plaintiff sued the tortfeasor's liability insurer in violation of the "direct action" rule); *Poole v. Lenzly*, 1st Dist. Hamilton No. C-130141, 2013-Ohio-4148, ¶ 7 (affirming dismissal where the complaint alleged claims against a nonparty without mentioning how the plaintiffs were entitled to relief against the defendants); *Larson* at ¶ 21 (ordering dismissal where the plaintiff sued an entity that was not capable of being sued; the defendant was not *sui juris*); *Folck v. Khanzada*, 2d Dist. Clark No. 2012-CA-18, 2012-Ohio-4971, ¶ 8, fn.1 ("Applying Civ.R. 12(B)(6) * * * to small-claims matters is not inconsistent with R.C. Chapter 1925."); *cf. Tennant v. Huntington Natl. Bank*, 8th Dist. Cuyahoga No. 108993, 2020-Ohio-4063, ¶ 12 (finding the application of Civ.R. 12(C) to be consistent with R.C. Chapter 1925).

{¶ 15} The ultimate question presented by this appeal is whether there is a set of facts consistent with Horn's complaint that would allow him to recover the

damages he seeks. In answering that question, we address Horn's assignments of error in a different order than he presented them.

**B. Standing**

{¶ 16} We begin with Horn's second assignment of error, which challenges the trial court's finding that Horn lacked standing to assert the claims in his complaint. "It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469, 715 N.E.2d 1062 (1999). "An action brought by a party that lacks standing will be dismissed." *State ex rel. Ohio Stands Up!, Inc. v. DeWine*, 167 Ohio St.3d 248, 2021-Ohio-4382, 192 N.E.3d 371, ¶ 5. To establish standing, a plaintiff must have suffered "(1) an injury that is (2) fairly traceable to the appellee's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Torrance v. Rom*, 2020-Ohio-3971, 157 N.E.3d 172, ¶ 24 (8th Dist.).

{¶ 17} Horn alleges that Dr. Cherian had a physician-patient relationship with La Riccia and negligently allowed and encouraged inappropriate communications over MyChart that caused the Cleveland Clinic to remove La Riccia as a patient of Dr. Cherian. The complaint alleges that this decision caused La Riccia to go without needed medical care and forced Horn and La Riccia to file lawsuits to attempt to undo the Clinic's decision.

{¶ 18} The trial court found that "any actionable claim" that may lie against Dr. Cherian would belong to La Riccia, not Horn. Dr. Cherian defends this holding,

arguing that Horn "is attempting to assert the potential claims of his wife, an unnamed third-party." Horn responds by arguing that the trial court did not consider that he suffered a loss of consortium, has had to take on additional care responsibilities and bought a significant number of nutritional supplements to attempt to care for his wife's condition at home.

{¶ 19} The thrust of Horn's one-paragraph complaint certainly focuses on the harm suffered by La Riccia, alleging that Dr. Cherian "caused my wife to be removed from his care," leaving her "completely without medical care." To the extent the complaint specifically references harm suffered by Horn, it is limited to his having "to endure a lengthy legal battle * * * thereby, incurring substantial undue cost and severe mental anguish."

{¶ 20} We agree with the trial court that Horn's complaint attempts to assert an independent malpractice claim and that Horn lacks standing to assert a malpractice claim against Dr. Cherian. *See State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 (1998) ("[I]f a claim is asserted by one who is not the real party in interest, then the party lacks standing to prosecute the action.").

{¶ 21} However, while "perhaps inartfully expressed" — *Dambrosio*, 8th Dist. Cuyahoga No. 52142, 1986 Ohio App. LEXIS 8976, at 3 — we find that Horn's complaint also states derivative claims for loss of consortium and spousal expenditures for medical care or treatment. *See* R.C. 2305.113(E)(7). Drawing all reasonable inferences in Horn's favor and considering the concise, nontechnical nature of small claims complaints, we find that these claims are adequately pleaded

and are not inconsistent with Horn's statement that La Riccia was left "completely without needed medical care," causing him "undue cost" and "mental anguish." We cannot say, based only the complaint, that it is beyond dispute at this point that Horn can prove no set of facts entitling him to damages.

{¶ 22} Dr. Cherian concedes in his appellee brief that "[a]ppellant asserts a prayer for loss of consortium and expenditures." Nevertheless, he argues that these derivative claims cannot be pursued independently because the fact that La Riccia is not a party to this lawsuit makes "proving the validity of [the underlying malpractice claim] impossible." That is not so.

{¶ 23} While a loss-of-consortium claim is a derivative claim, it "belongs not to the person suffering a physical injury but to another"; it is "independent." *Fehrenbach v. O'Malley*, 113 Ohio St.3d 18, 2007-Ohio-971, 862 N.E.2d 489, ¶ 11. Thus, even where an injured person completely releases a tortfeasor from liability, a claim for loss of consortium may still exist in the injured person's spouse. *See Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 92–93, 585 N.E.2d 384 (1992).[3]

{¶ 24} It is, of course, Horn's burden, ultimately, to meet his burden of proof on the claims. But the fact that La Riccia is not a party to the case does not divest Horn of standing to pursue these claims. We, therefore, find some merit to Horn's second assignment of error. We express no opinion on the ultimate merits of Horn's

---

[3] We note that our discussion relates to whether Horn has standing to bring a derivative medical claim even if his wife is not a party to the lawsuit. Dr. Cherian raised no arguments before the trial court based on Civ.R. 19 and makes no joinder argument on appeal.

derivative claims, including but not limited to, whether there was a legally cognizable tort in the first place and whether Horn has suffered cognizable loss-of-consortium or expenditure damages as a result. Horn does, however, have standing to assert those claims and, therefore, his complaint cannot be dismissed for lack of standing.

{¶ 25} We do affirm the dismissal of Horn's claim for malpractice against Dr. Cherian. Because Horn was not Dr. Cherian's patient, he does not have standing to assert that claim.[4]

{¶ 26} Having found that Horn had standing to assert derivative claims for loss of consortium and expenditures, derivative of alleged malpractice that injured La Riccia, we turn to the question of whether Horn was required to file an affidavit of merit with his complaint under Civ.R. 10(D).

**C. Affidavit of Merit**

{¶ 27} Horn's first assignment of error addresses the trial court's dismissal of Horn's complaint for failure to include an affidavit of merit. The trial court was correct in finding Horn's claims to be medical claims requiring an affidavit of merit under Civ.R. 10(D) and Horn waived any argument that no affidavit of merit is required to support a small claims complaint.

{¶ 28} Civ.R. 10(D) provides as follows:

[A] complaint that contains a medical claim * * *, as defined in R.C. 2305.113, shall be accompanied by one or more affidavits of merit

---

[4] We do not consider or address La Riccia's ability to assert a malpractice claim herself.

relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability. Affidavits of merit shall be provided by an expert witness meeting the requirements of Evid.R. 702 and, if applicable, also meeting the requirements of Evid.R. 601(D). Affidavits of merit shall include all of the following:

(i)     A statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;

(ii)    A statement that the affiant is familiar with the applicable standard of care;

(iii)   The opinion of the affiant that the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff.

Civ.R. 10(D)(2)(a).

{¶ 29} The rule states that an "affidavit is necessary in order to 'establish the adequacy of the complaint.'" *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 10, quoting Civ.R. 10(D)(2)(d). Therefore, "the proper response to the failure to file the affidavit required by Civ.R. 10(D)(2) is a motion to dismiss filed under Civ.R. 12(B)(6)." *Fletcher* at ¶ 3.

{¶ 30} This requirement is designed to "prevent[] the filing of medical claims that are not supported by an expert's opinion" and "deter[] filing actions against all medical providers who cared for a patient." *Erwin v. Bryan*, 125 Ohio St.3d 519, 2010-Ohio-2202, 929 N.E.2d 1019, ¶ 19; *see also Fletcher* at ¶ 10 ("The rule is designed to ease the burden on the dockets of Ohio's courts and to ensure that only those plaintiffs truly aggrieved at the hands of the medical profession have their day in court.").

{¶ 31} Horn contends that his claim is not a "medical claim" to which this requirement applies because (1) the negligence related to a "non-medical decision" and (2) the breach of the standard of care here was so obvious that no expert testimony was required to establish it. We disagree.

{¶ 32} A "medical claim" includes "any claim that is asserted in any civil action against a physician * * * that arises out of the medical diagnosis, care, or treatment of any person." R.C. 2305.113(E)(3). Derivative claims like those for loss of consortium and expenditures that "arise from the medical diagnosis, care, or treatment of a person," are also "medical claims." *Id.*

{¶ 33} Horn's derivative claims are clearly medical claims; indeed, he invokes the definition of a medical derivative claim in R.C. 2305.113(E)(7) in his appellate brief when arguing that he has standing to assert these claims. Horn may not be claiming that Dr. Cherian failed to diagnose a disease or left a surgical sponge behind after a surgery, but his claim that Dr. Cherian's use of MyChart was unreasonable still sounds in malpractice. "'[M]alpractice consists of 'the professional misconduct of members of the medical profession * * *.'" *Muir v. Hadler Real Estate Mgt. Co.*, 4 Ohio App.3d 89, 90, 446 N.E.2d 820 (10th Dist.1982), quoting *Richardson v. Doe*, 176 Ohio St. 370, 372, 199 N.E.2d 878 (1964); *see also Halter v. Dagostino*, 8th Dist. Cuyahoga No. 110717, 2022-Ohio-1069, ¶ 12 ("[A] claim against a professional is always governed by the law of malpractice."). Horn's derivative claim against Dr. Cherian is focused on a decision

allegedly made by Dr. Cherian's employer as a result of alleged improper communications exchanged during La Riccia's treatment; it is a medical claim.

{¶ 34} The Ohio Supreme Court explained a plaintiff's burden on a medical-malpractice claim in *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976), as follows:

> Under Ohio law, as it has developed, in order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things.

*Bruni* at 131.

{¶ 35} "Expert testimony is necessary to prove the elements of medical malpractice 'whenever those elements are beyond the common knowledge and understanding of the jury.'" *Adams v. Kurz*, 10th Dist. Franklin No. 09AP-1081, 2010-Ohio-2776, ¶ 11, quoting *Williams v. Lo*, 10th Dist. Franklin No. 07AP-949, 2008-Ohio-2804, ¶ 11; *see also Higgins v. Ranasinghe*, 8th Dist. Cuyahoga No. 100722, 2014-Ohio-4674, ¶ 24.

{¶ 36} Horn's argument is that the elements of negligence and causation are not beyond the common knowledge and understanding of the jury here. This argument attempts to shoehorn his claims into the "common knowledge exception," an exception to the requirement of expert testimony that "has a limited scope in a

world of increasing medical complexity." *Cunningham v. Children's Hosp.*, 10th Dist. Franklin No. 05AP-69, 2005-Ohio-4284, ¶ 20.

{¶ 37} As an initial matter, it is not settled that the common-knowledge exception applies to obviate the requirement for an affidavit of merit. The plain language of the rule would seem to only require an affidavit to support the adequacy of claims against defendants "for whom expert testimony is necessary to establish liability." Civ.R. 10(D)(2)(a). But the Supreme Court has read the rule to "prevent[] the filing of medical claims that are not supported by an expert's opinion." *Erwin,* 125 Ohio St.3d 519, 2010-Ohio-2202, 929 N.E.2d 1019, at ¶ 19. Horn directs us to an opinion from the Tenth Appellate District that recognized that "a body of cases has developed where the appellate courts have not required an affidavit of merit but have held that common knowledge is sufficient * * *." *Wallace v. OhioHealth Corp.*, 10th Dist. Franklin No. 18AP-279, 2018-Ohio-4293, ¶ 6.

{¶ 38} We need not answer that question on this appeal, though, because even if the exception applies to Civ.R. 10(D), it clearly does not apply to Horn's claims. "'[R]elatively few courts in Ohio have found the common knowledge exception applicable so as to obviate the need for expert witness testimony * * *.'" *Cunningham* at ¶ 20, quoting *Buerger v. Ohio Dept. of Rehab. & Corr.*, 64 Ohio App.3d 394, 399, 581 N.E.2d 1114 (10th Dist.1989). Most of the cases in which courts have found the exception to apply involve falls in a medical facility. *See Wallace* at ¶ 6, *Cunningham* at ¶ 21; *but see Schraffenberger v. Persinger, Malik & Haaf, M.D.s, Inc.*, 114 Ohio App.3d 263, 267, 683 N.E.2d 60 (1st Dist.1996) (doctor

negligently and erroneously told a patient that the patient was sterile after a vasectomy).

{¶ 39} Horn alleges that Dr. Cherian — who Horn says is the only practitioner of his medical subspecialty in this part of Ohio — communicated with his patient, during treatment for "a rare otoneurological * * * condition," in an unreasonable way over an unreasonable medium. This is a claim beyond the common knowledge of the jury. That Horn and Dr. Cherian's counsel had vastly different notions at oral argument about how physicians generally use MyChart to communicate with their patients makes that plain enough, even before considerations of damage and causation.

{¶ 40} Having found that expert testimony is required to establish Dr. Cherian's liability for Horn's derivative medical claims for loss of consortium and expenditures, we conclude that Civ.R. 10(D) would require an affidavit of merit to support the adequacy of Horn's complaint.

{¶ 41} We end our inquiry here, but we note that no party offered us a citation to a case in which a court considered whether Civ.R. 10(D) applies to small claims matters in the first place. "[P]roceedings in the small claims division of a municipal court are subject to the Rules of Civil Procedure" except where the Civil Rules are inconsistent with the procedures set forth in Chapter 1925 of the Revised Code or with "rules of court adopted in furtherance of the purposes of this chapter." R.C. 1925.16. Where the Civil Rules are inconsistent with Chapter 1925 or the rules of court, the Civil Rules give way. *See* Civ.R. 1(C) ("These rules, to the extent that

they would by their nature be clearly inapplicable, shall not apply to procedure * * * in small claims matters * * *.").  It is not immediately clear to us that Civ.R. 10(D)(2) is consistent with R.C. Chapter 1925 and the procedures in small claims court,[5] but Horn waived any argument about that question by not arguing the inapplicability of Civ.R. 10(D)(2) before the municipal court or on appeal.  We, therefore, leave consideration of this question to a future case where the issue is properly before us and sufficiently briefed.

{¶ 42} Because Horn implicitly conceded that Civ.R. 10(D)(2) applies to small claims proceedings and because Horn's derivative claims are medical claims for which expert evidence is required to establish liability, we agree with the municipal court that Horn's derivative claims failed under Civ.R. 12(B)(6) because they were not supported by an affidavit of merit.

**D. The Effect of the Dismissal**

{¶ 43} In his fifth assignment of error, Horn contends that the trial court erred by dismissing his complaint with prejudice.  We agree, in part, because Horn's derivative claims for loss of consortium and expenditures should have been dismissed without prejudice.  We disagree as to Horn's malpractice claim and claim seeking legal expenses related to other cases he filed related to Dr. Cherian's treatment of La Riccia, which were appropriately dismissed with prejudice.

---

[5] The Supreme Court has said that "Civ.R. 10(D)(2) requires that every complaint containing a medical claim * * * must include an affidavit of merit from an expert witness," but this statement was made outside of the small claims context. *See Troyer v. Janis*, 132 Ohio St.3d 229, 2012-Ohio-2406, 971 N.E.2d 862, ¶ 7.

{¶ 44} "A dismissal with prejudice operates as an adjudication on the merits. It is axiomatic, then, that a dismissal otherwise than on the merits should be without prejudice." (Citation omitted.) *Fletcher,* 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, at ¶ 16, citing *Thomas v. Freeman,* 79 Ohio St.3d 221, 225, 680 N.E.2d 997 (1997), fn.2.

{¶ 45} A Civ.R. 12(B)(6) motion to dismiss "is a procedural tool testing the sufficiency of the complaint." *Fletcher* at ¶ 17. "[A] dismissal for failure to state a claim is without prejudice except in those cases where the claim cannot be pleaded in any other way." *Id.,* citing *Collins v. Natl. City Bank,* 2d Dist. Montgomery No. 19884, 2003-Ohio-6893, ¶ 51 ("An order of dismissal entered pursuant to Civ.R. 12(B)(6) is an adjudication on the merits of the issue the rule presents, which is whether a pleading put before the court states a claim for relief. It does not adjudicate the merits of the claim itself, unless it can be pleaded in no other way."); *but see State ex rel. Arcadia Acres v. Ohio Dept. of Job & Family Servs.,* 123 Ohio St.3d 54, 2009-Ohio-4176, 914 N.E.2d 170, ¶ 15.

{¶ 46} Horn's claim for malpractice cannot be pleaded in any other way, because he was not Dr. Cherian's patient. For the reasons discussed in the next section, we also find that Horn's claim for legal expenses related to other lawsuits he filed as a result of Dr. Cherian's treatment of La Riccia cannot be pleaded in any other way. Therefore, it was proper for the trial court to dismiss those claims with prejudice.

{¶ 47} The same cannot be said for Horn's derivative medical claims, though. A dismissal for failure to attach an affidavit of merit "shall operate as a failure otherwise than on the merits." Civ.R. 10(D)(2)(d); *see also Fletcher* at ¶ 18–19. Because we find that the only basis justifying the dismissal of Horn's derivative claims was the failure to attach an affidavit of merit, it was error for the trial court to dismiss those claims with prejudice. *See Fletcher* at ¶ 19 ("[W]hen a medical claim is dismissed for want of an affidavit of merit, that problem could be rectified in a refiling simply by including the requisite affidavit.").

### E. Prayer for Legal Expenses

{¶ 48} In his fourth assignment of error, Horn claims that the trial court erred by dismissing his prayer for damages he says are attributable to legal expenses and court costs he incurred in collateral litigation over Dr. Cherian's treatment of La Riccia. Horn says that Dr. Cherian was not a party to that litigation; he argues that Dr. Cherian's negligence "has forced me into litigation against third parties" and that Dr. Cherian "should be responsible for the costs incurred as a result of that litigation." Dr. Cherian argues that attorney fees and court costs are prohibited by the American rule and are not among those expenditures contemplated by R.C. 2305.113(E)(7)(b) (defining the derivative claim for relief related to spousal expenditures). We agree that Horn cannot recover these alleged damages.

{¶ 49} "'Ohio has long adhered to the "American rule" with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation.'" *Cruz v. English Nanny & Governess School,*

Slip Opinion No. 2022-Ohio-3586, ¶ 35, quoting *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. There are three "well-established exceptions" to this rule: "(1) when a statute creates a duty to pay attorney fees, (2) when the losing party acted in bad faith, and (3) when the parties contracted to shift the fees." *Cruz* at ¶ 36. None of these well-established exceptions apply here. Horn's argument is that we should find that this case fits within another recognized exception to the American rule, "'where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest.'" *S & D Mechanical Contrs. v. Enting Water Conditioning Sys., Inc.*, 71 Ohio App.3d 228, 241, 593 N.E.2d 354 (2d Dist.1991). In that situation, attorney fees "should be treated as the legal consequences of the original wrongful act and may be recovered as damages." *Id.*

{¶ 50} Ohio courts have considered attorney fees to be appropriate compensatory damages under certain circumstances. Horn cites to no Ohio case holding as much,[6] but we are aware of such cases in certain contexts.

---

[6] Horn directs us to a Maryland case in support of his argument. *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 445, 952 A.2d 275 (2008) (recognizing an exception to the American rule when "the wrongful conduct of a defendant forces a plaintiff into litigation with a third party"). The case is not binding precedent but we discuss that state's application of the exception below in fn. 7.

{¶ 51} Attorney fees have been approved as consequential damages for some real-estate claims, for example.[7] In *Columbus Invests. Group*, the Tenth District approved an award of attorney fees against a defendant who served as a witness to a fraudulent warranty deed. *Columbus Invests. Group*, 10th Dist. Franklin Nos. 02AP-271 and 02AP-418, 2002-Ohio-5968, ¶ 31. The court reasoned that the damage caused by the defendant — a cloud on the plaintiff's title to real property — "had to be remedied by the provision of legal services and, therefore, the attorney fees are compensatory damages." *Id.* at ¶ 33. Our court has also held that "[r]easonable attorney fees are allowable as part of compensatory damages in an action for breach of covenant of quiet enjoyment of a leasehold * * *." *Jean-Gil, Inc. v. Babin*, 8th Dist. Cuyahoga No. 39178, 1980 Ohio App. LEXIS 12543, 8 (Sept. 25, 1980). Horn's claim is not a real-estate claim, of course.

---

[7] The line of Maryland cases developing the exception stated in *Nova Research*, see above at fn. 6, frequently involved real-estate claims as well. *See McGaw v. Acker, Merrall & Condit Co.*, 111 Md. 153, 160–161, 73 A. 731 (1909) (holding that a defendant who wrongfully renewed a lease in his own name was responsible for the plaintiff's attorney fees and costs incurred in securing the new lease in its name, reasoning that "it was about to lose possession of the premises by the wrongful act of the defendant, and it was obliged to employ professional aid and incur expense to retain possession of the premises * * * and the necessary expenses it incurred to regain the possession is an element of the injury"); *E. Shore Title Co. v. Ochse*, 453 Md. 303, 331, 160 A.3d 1238 (2017) (negligent title company was responsible for attorney fees incurred by the plaintiffs in separate litigation with a third-party property owner to resolve a title dispute that resulted from the title company's negligence); *Montgomery Village Assocs. v. Mark*, 95 Md.App. 337, 342–344, 620 A.2d 975 (1993) (plaintiffs could recover fees incurred in connection with a bankruptcy proceeding where the defendants' failure to perform under a repurchase agreement for a condominium unit forced the plaintiffs to seek bankruptcy protection to avoid foreclosure with a third-party lender). For the exception to apply in Maryland, the expenses from the collateral litigation must be "the natural and proximate consequence of the injury complained of, * * * incurred necessarily and in good faith, and * * * a reasonable amount." *Ochse* at 331.

{¶ 52} Courts have also "long recognized" that "a plaintiff may recover attorney fees expended in an action brought by a third party as compensatory damages where the defendant's breach of contract caused the plaintiff to engage in the litigation with the third party." *Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756, 142 N.E.3d 1267, ¶ 14 (8th Dist.). Our court has also held that "attorney fees can be awarded as compensatory damages to the prevailing party on a motion to enforce a settlement agreement when the fees are incurred as a direct result of a breach of the settlement agreement." *Id.* at ¶ 11. Horn's claim is not a contract claim and does not arise out of the breach of a settlement agreement.

{¶ 53} In legal-malpractice actions attorney fees that are "incurred to rectify, or to attempt to rectify, the malpractice are recoverable as indirect, or consequential, damages" when "the factfinder is persuaded that the fees and expenses of the successor attorney were causally related to an established cause of action for malpractice." *E.g.*, *Green v. Bailey*, 1st Dist. Hamilton No. C-070221, 2008-Ohio-3569, ¶ 17. Horn's claim is not a legal-malpractice claim, either.

{¶ 54} Horn says he was "forced" to file suit against the Cleveland Clinic and others to attempt to undo the care decision the Clinic made with respect to La Riccia's treatment with Dr. Cherian. Horn says the lawsuit would not have been necessary except that Dr. Cherian was negligent in his treatment of La Riccia, which Horn says caused the Clinic to remove La Riccia as a patient of Dr. Cherian. In this separate small claims suit, Horn seeks to recover the litigation expenses incurred in that legal campaign. Horn directs us to no authority allowing the recovery of

attorney fees in the context of a medical claim and we do not read any of the authorities discussed above to authorize the recovery of attorney fees or other litigation expenses under the circumstances presented in this case. The alleged negligence did not "involve[] the plaintiff in litigation with others." *S & D Mechanical Contrs.,* 71 Ohio App.3d at 241, 593 N.E.2d 354. Nor did the alleged negligence "place[] him in such relation with others as makes it necessary to incur expense to protect his interest." *Id.* To extend the exception to encompass the circumstances of this case would allow the exception to swallow the rule.

{¶ 55} The trial court was, therefore, correct in dismissing Horn's prayer for legal expenses related to the collateral litigation Horn filed against Dr. Cherian's employer in the common pleas court. Because there was no other way for Horn to plead this request for relief, and as discussed further above, the trial court correctly dismissed the claim for this relief with prejudice.

## F. Prayer for Mental Anguish Damages

{¶ 56} Horn's third assignment of error challenges the trial court's holding that the "pursuit of emotional distress or mental anguish damages is not within the jurisdiction of this Court" pursuant to R.C. 1925.02(A)(2)(a). That section states that "[a] small claims division does not have jurisdiction in any of the following: (i) [l]ibel, slander, replevin, malicious prosecution, and abuse of process actions; (ii) [a]ctions on any claim brought by an assignee or agent, except [in certain enumerated circumstances]; (iii) [a]ctions for the recovery of punitive or exemplary

damages." R.C. 1925.02(A)(2)(a). Horn argues that his claim is not among those excluded from the municipal court's small claims jurisdiction. We agree.

{¶ 57} Small claims courts have passed on claims of damages related to mental and emotional damages. *E.g.*, *Marsh v. Lansing Gardens Apts.*, 7th Dist. Belmont No. 07-BE-32, 2008-Ohio-3404, ¶ 22 (affirming municipal court's award of damages in part because "there was evidence that [the plaintiff] suffered damages as a result of the emotional toll the problems with her apartment took on her.")

{¶ 58} Horn presents derivative medical claims for loss of consortium and expenditures; these causes of action are not among those specifically excluded from the municipal court's small claims jurisdiction. Therefore, it was error for the trial court to dismiss Horn's claims for lack of subject-matter jurisdiction. Our holding does not speak to the merits of Horn's claim that he suffered cognizable damages for loss of consortium or expenditures. But the municipal court has jurisdiction to hear those claims.

### G. The Motion to Reconsider

{¶ 59} In his sixth assignment of error, Horn contends that the trial court should not have denied the document he filed that was styled as an "objection" to the court's dismissal order. It seems that Horn erroneously believed he was filing an objection to a magistrate's decision. The dismissal was ordered by the trial judge and it was a final order; it disposed of all the claims between all the parties, leaving nothing else to be determined. *See Udelson v. Udelson*, 8th Dist. Cuyahoga No. 92717, 2009-Ohio-6462, ¶ 14–15.

{¶ 60} In his "objection," Horn simply argued that the trial court should not have dismissed his complaint. In other words, the "objection" was nothing more than a motion to reconsider the trial court's judgment.

{¶ 61} As our court said in *Udelson*,

> [t]he Ohio Rules of Civil Procedure limit relief from judgments to motions expressly provided for in the rules. The rules allow for relief from final judgments by means of Civ.R. 50(B) (motion notwithstanding the verdict), Civ.R. 59 (motion for a new trial), and Civ.R. 60(B) (motion for relief from judgment). The rules do not, however, prescribe motions for reconsideration after a final judgment in the trial court. Accordingly, motions for reconsideration of a final judgment in the trial court are a nullity and trial courts do not have jurisdiction to address them.

(Citations omitted.) *Udelson* at ¶ 16.

{¶ 62} While trial courts have some discretion to treat a motion for reconsideration as a motion to vacate under Civ.R. 60(B) — *see id.* at ¶ 17 (collecting cases) — the trial court did not do so here and Horn's "objection" does not attempt to state a case for relief from judgment under Civ.R. 60(B). Because Horn's "objection" to the trial court's dismissal order was nothing more than a motion to reconsider the final judgment, the trial court did not err in denying it.[8]

---

[8] In his reply brief, Horn argues for the first time that it was "procedurally improper" for the trial judge to grant Dr. Cherian's motion to dismiss in the absence of a magistrate's decision and recommendation on the issue. Horn cites no authority supporting the argument. Moreover, an appellate court will generally not address an argument raised for the first time in a reply brief. *See, e.g., Raudins v. Hobbs*, 2018-Ohio-2309, 104 N.E.3d 1040, ¶ 54, fn. 10 (8th Dist.), citing *Bank of N.Y. Mellon Trust Co., N.A. v. Unger*, 8th Dist. Cuyahoga No. 101598, 2015-Ohio-769, ¶ 7, fn. 1 (appellate courts "cannot accept arguments raised for the first time in the reply brief on appeal"); *Hadden Co., L.P.A. v. Zweier*, 10th Dist. Franklin No. 15AP-210, 2016-Ohio-2733, ¶ 15. Because the argument was raised in the reply brief and is unsupported by any citations to legal authority, we will not address it.

**{¶ 63}** We, therefore, overrule Horn's sixth assignment of error.

## III. Conclusion

**{¶ 64}** For the reasons stated above, we affirm the judgment of the municipal court, in part, and we reverse it, in part.

**{¶ 65}** We reverse the dismissal of Horn's derivative claims for loss of consortium and expenditures, but only to the extent that the claims were dismissed with prejudice. We remand this matter with instructions for the trial court to dismiss those claims without prejudice for failure to attach an affidavit of merit to the complaint.

**{¶ 66}** We affirm the dismissal, with prejudice, of Horn's independent claim of malpractice against Dr. Cherian arising out of the doctor-patient relationship between La Riccia and Dr. Cherian. We also affirm the dismissal, with prejudice, of Horn's prayer for legal expenses and court costs related to the litigation Horn filed in the Cuyahoga County Court of Common Pleas related to Dr. Cherian's treatment of La Riccia.

It is ordered that the appellant and the appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
LISA B. FORBES, J., CONCUR