NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0305n.06

Case No. 24-4085

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 17, 2025
KELLY L. STEPHENS, Clerk

KEITH COLE,

    Plaintiff-Appellant,

v.

TOLEDO REFINING COMPANY, LLC,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

BEFORE: SUTTON, Chief Judge; CLAY and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Keith Cole argued that an explosion at Toledo Refining Company's refinery injured him and caused property damage to his home. Under Ohio law, he needed expert testimony to prove there was a causal connection between that explosion and his injuries. But he didn't provide any. So we affirm the district court's grant of summary judgment to the refinery.

## I.

Keith Cole lived near an oil refinery in Toledo, Ohio. He alleges that one day, when he was at home, an explosion at the refinery "threw him around," causing him to bang into "articles and walls" inside his home. R. 1-1, Pg. ID 7. He also claims that the blast "rocked the house" and "dislodged" his chimney, and that he "sustained injuries to the left side of his body." *Id.* at Pg. ID 7–8. As a result, Cole says he suffered many harms: property damage, physical injury, pain and

suffering, medical expenses, interference with his ability to perform pleasurable activities, and possible permanent disability.

So Cole sued in state court. The refinery removed the case and moved to dismiss. The district court partially agreed, but it let Cole's negligence claim proceed.

The case proceeded to discovery. Cole filed copies of his medical records and an estimate for repairs to his chimney. The refinery, for its part, filed an expert report stating that Cole's injuries did not stem from the explosion.

The refinery then moved for summary judgment and to strike the documents that Cole filed. It said Cole's documents purportedly providing expert testimony on causation didn't comply with the federal rules and, even if they did, they didn't say anything about causation. The district court agreed with the refinery. It explained that Cole needed expert testimony, and that he hadn't provided any. So the district court granted the refinery's motion for summary judgment.

Cole appealed.

## II.

## A.

First, there's a threshold issue. Does this court have jurisdiction to hear Cole's case? Yes—although the reason is complex.

District courts have diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a). Normally, it's easy to tell whether a plaintiff meets the amount-in-controversy requirement. Courts just look to what plaintiffs allege on the face of their complaints. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). That sum controls if the plaintiff makes the claim in good faith, unless a defendant can show, to a legal certainty, that the claim is really for a smaller

amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). Thus, the amount-in-controversy inquiry is usually straightforward.

But it can get more complicated when a plaintiff first files an action in state court, and the defendant later removes it to federal court. 28 U.S.C. § 1441(a). Why? Some states don't let a plaintiff allege a specific amount in controversy. Ohio, for example, says a plaintiff seeking more than $25,000 can't put a specific amount in his pleadings—he can only say he seeks more than $25,000. Ohio R. Civ. P. 8(a). And that is what Cole did.

For a while, this situation presented no problem, since the federal amount-in-controversy requirement used to be only $10,000, which was lower than or the same as the state statutory maximums. But Congress increased the federal jurisdictional amount, first to $50,000 and then to the $75,000 figure we know today. And many states never adjusted their own limits. Naturally, a problem emerged: when a state plaintiff seeks damages "in excess of $25,000," as required by his state, and a defendant wants to remove, what's the amount in controversy?

In such a situation, courts turn to a second statue, 28 U.S.C. § 1446. That provision reiterates that normally, the amount-in-controversy is "the sum demanded in good faith in the initial pleading." *Id.* § 1446(c)(2). The statute then provides two exceptions that allow for the defendant's notice of removal to state the amount in controversy. The second exception is relevant here. It applies when the plaintiff seeks a monetary judgment and the State "does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." *Id.* § 1446(c)(2)(A)(ii). In such a situation, if the defendant removes the case to federal court, a defendant's plausible amount in controversy allegation "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014). If either the court inquires or the plaintiff objects, the defendant must lay his

cards on the table. The defendant must then prove, by a preponderance of the evidence, that the amount-in-controversy requirement has been met. *Id.* at 88.

Here, the court didn't inquire, and the plaintiff didn't object. So the dispositive question is whether the refinery plausibly alleged an amount in controversy exceeding $75,000.

It did. Cole alleged serious personal injuries that prevented him from working, interfered with his ordinary activity, and caused physical injury, pain and suffering, and property damage. Such injuries, when coupled with the physical damage to his home, are costly and plausibly exceed a $75,000 figure. So, in the end, the district court was right to exercise jurisdiction. *Id.* at 87.

B.

Turning to the merits, the district court granted summary judgment to the refinery on Cole's negligence claim. We review that determination de novo. *1st Source Bank v. Wilson Bank & Tr.*, 735 F.3d 500, 502 (6th Cir. 2013). A grant of summary judgment is proper when there's no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

To make out a negligence claim under Ohio law, a plaintiff must show that the defendant owed the plaintiff a duty of care, breached that duty, and proximately caused the plaintiff's injury. *See Rieger v. Giant Eagle, Inc.*, 138 N.E.3d 1121, 1125 (Ohio 2019).

This case hinges on causation. If an untrained layperson wouldn't have the ability or expertise to decide whether a defendant's actions could cause a plaintiff's injury, then the plaintiff must provide medical or scientific evidence to show causation. *Terry v. Caputo*, 875 N.E.2d 72, 77 (Ohio 2007).

Thus, whether Cole can survive summary judgment depends on two questions. First, do his injuries require expert testimony? Second, did he present the relevant expert testimony?

1.

Cole argues that he suffered personal injury and harms related to those injuries.[1]  Cole breaks these injuries out:  physical injury and related harms, pain and suffering, medical expenses, interference with his ability to perform pleasurable activities, and permanent disability.  Under Ohio law, Cole needed expert testimony to show that Toledo Refining caused these injuries.[2]

*Physical Injuries and Related Harms.*  Cole needed expert testimony to make out his personal injury claims.  Ohio courts tie the need for expert testimony to the "type of injury" that a plaintiff asserts.  *Wright v. City of Columbus*, No. 05AP-432, 2006 WL 391823, at *5 (Ohio Ct. App. Feb. 10, 2006).  If the accident causes an injury involving the "internal complexities of the body," or if it caused "subjective" pain without an objective manifestation, Ohio courts require expert testimony.  *Wood v. Est. of Batta*, No. 90430, 2008 WL 795127, at *4 (Ohio Ct. App. Mar. 27, 2008); *Rogers v. Armstrong*, No. C-010287, 2002 WL 397728, at *3 (Ohio Ct. App. Mar. 15, 2002).  If, on the other hand, the injury is "readily observable or understandable," the plaintiff may rely on lay testimony alone.  *Chilson v. Conrad*, No. 2005-P-0044, 2006 WL 1816535, at *3 (Ohio Ct. App. July 3, 2006).

Cole's medical records explain that he had neck pain and discomfort as well as muscle spasms in his neck.  They also detail sinus problems.  The second record lists "neck and arm pain secondary to an explosion occurring near his house."  R. 31-2, Pg. ID 193.  The refiner's expert

---

[1] On appeal, Cole doesn't challenge the district court's grant of summary judgment on his property-damage injuries. Thus, we don't address that issue here. *See United States v. Galaviz*, 645 F.3d 347, 362 (6th Cir. 2011).

[2]  Cole doesn't dispute that Ohio's state rules regarding experts apply here.  In addition, Cole hasn't argued that he'd win if we treated the expert requirement as procedural and thus applied federal law.  So we need not decide whether Ohio's expert testimony requirement is substantive and extends to federal proceedings under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *Cf. Madej v. Maiden*, 951 F.3d 364, 373–74 (6th Cir. 2020).

report also relayed these symptoms:  numbness, and tingling of both arms, anxiety and stress, lack of motivation, decreased energy, poor sleep, and an adjustment disorder.

These harms are textbook internal injuries requiring expert testimony.  For one, "overwhelming" Ohio caselaw requires plaintiffs to introduce expert medical evidence to support subjective (and invisible) neck, shoulder, or back injuries.  *Clough v. Watkins*, No. 19CA20, 2020 WL 3447762, at *9 (Ohio Ct. App. June 19, 2020).  Here, Cole's own records suggest he's alleging just such an injury.

Further, Cole's stress, anxiety, energy level, sleep, and adjustment disorder are "subjective" injuries that require expert testimony.  *Rogers*, 2002 WL 397728, at * 3.  Ohio courts have explained that a plaintiff needs expert testimony to prove that a car accident caused "mental fog" and "depression."  *Pietrangelo v. Hudson*, No. 111805, 2023 WL 2534132, at *7 (Ohio Ct. App. Mar. 16, 2023).  Similarly, a plaintiff's "loss of sleep" also requires expert testimony on causation.  *Dean v. West*, No. 00CA00014, 2000 WL 1335068, at *4 (Ohio Ct. App. Sept. 14, 2000).  So too here.

*Pain and Suffering*.  Likewise, Cole needed expert testimony to connect his pain and suffering to the alleged explosion.  Indeed, many Ohio cases involving neck pain or back injuries require expert testimony even though a plaintiff seeks to recover for "*pain* to the neck, back, and shoulders."  *Wood*, 2008 WL 795127, at *4 (emphasis added).

But the picture isn't clear.  Why?  Ohio courts appear to diverge over whether a plaintiff needs an expert to connect this injury to an accident.  *Compare Youssef v. Jones*, 602 N.E.2d 1176, 1179 (Ohio Ct. App. 1991), *and Turner v. Barrett*, 426 N.E.2d 1193, 1194 (Ohio Ct. App. 1980), *with Wood*, 2008 WL 795127, at *4.

That complication presents no issue here. A plaintiff doesn't need expert testimony to prove his pain and suffering if he's already set out a causal connection between the defendant's conduct and the primary injury from which the pain and suffering flows. *Mahaffey v. Stenzel*, No. 97CA2391, 1999 WL 50229, at *6 (Ohio Ct. App. Jan. 25, 1999). But Cole hasn't done so. So there's no causal link between the defendant and Cole's alleged pain and suffering. *Cf. Nocilla v. Bridges*, No. 23-3184, 2023 WL 7550019, at *6 (6th Cir. 2023).

*Incurred Medical Expenses.* Similarly, Cole needed expert testimony on his medical expenses for two reasons. First, Ohio courts have explained that expert testimony is needed to establish future medical billings. *Hammerschmidt v. Mignogna*, 685 N.E.2d 281, 285 (Ohio Ct. App. 1996). And, for past billings, Ohio courts have set out that "expert testimony" is "required to establish the necessity of the treatment which resulted in the billings." *Gerrick v. Anheuser Busch Co.*, No. 2000CA00140, 2000 WL 1838903, at *2 (Ohio Ct. App. Dec. 11, 2000). Thus, a lack of expert testimony is fatal. Second, this injury is, like Cole's alleged pain and suffering, also derivative of the initial physical injuries. And as the above analysis suggests, without first establishing that the initial explosion caused the injury that caused Cole to seek medical treatment in the first place, Cole cannot succeed.

*Interference with Ability to Perform Usual, Pleasurable Activities.* Next, Cole says he suffered "interference with his ability to perform usual, pleasurable activities." R. 1-1, Pg. ID 8. Determining whether Ohio requires expert testimony on such a claim is complicated because this phrase does not appear in any Ohio statute or caselaw. But it likely requires expert testimony. Why? Two reasons. First, as with the above harms, it sits downstream of the internal injuries that Cole alleges. And thus, without expert testimony about those injuries, there's no way for a jury to conclude that the refinery interrupted Cole's "ability to perform usual, pleasurable activities."

Second, it appears that Cole's claim is roughly analogous to a loss of consortium claim at state law. And these claims, often arising in the medical malpractice context, require expert evidence. *See, e.g.*, *Roberts v. Ohio Permanente Med. Grp., Inc.*, 668 N.E.2d 480, 485 (Ohio 1996). Indeed, in one case, a court required expert evidence for merely filing a medical claim, an act that didn't require any inquiry into the practice of medicine at all. *Horn v. Cherian*, 211 N.E.3d 728, 739 (Ohio Ct. App. 2023). Thus, it appears Ohio requires expert testimony for analogous claims.

Applying that logic here, Cole needed expert testimony to make out this harm. While it may not be a perfect match to loss of consortium and medical malpractice, Cole's reference to "pleasurable activities" invokes the same kind of harms at issue in those cases. What's more, his alleged harm sits downstream of the precise type of injury—internal spinal injuries—that Ohio has long required expert testimony to make out.

*Permanent Disability*. Whether Cole needed expert testimony on his permanent disability is a closer call. Ohio courts don't always require expert testimony in personal injury cases. *See Shackelford v. Kovacik*, No. 1244, 1986 WL 2724, at *3 (Ohio Ct. App. Feb. 28, 1986). But in many cases, such as in medical malpractice disputes, courts do require such evidence. *Schwimmer v. Bowsher*, No. 92AP-1140, 1993 WL 51173, at *2 (Ohio Ct. App. Feb. 25, 1993). As above, the touchstone for whether courts will require such evidence is whether a layperson could construct a causal chain. *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 592 N.E.2d 828, 833–34 (Ohio 1992). Cole appears to allege his disability stemmed from the injuries the explosion caused. Given he needs expert testimony to establish the injuries in the first instance, the alleged disability also requires expert testimony.

\*

All told, Cole needed to present evidence of expert testimony to survive summary judgment.

2.

Now, to the second question: did Cole present the necessary expert testimony? No. He only filed medical records that, at worst, didn't set forth an opinion on causation, and at best, aren't sufficient to survive summary judgment. Therefore, his claims fail.[3]

Cole's medical records form the heart of this dispute. The two documents summarize Cole's trips to a doctor and physical therapist. The first, written by a doctor named Anthony Atkins, reported that Cole had "neck pain and discomfort" that "started when an explosion rattled his home and the shaking has caused neck pain and discomfort." R. 31-1, Pg. ID 169. The second, a physical therapist named Hunter Johnson, wrote that Cole had complained "of neck and arm pain secondary to an explosion occurring near his house in [N]ovember 2021." R. 31-2, Pg. ID 193.

At first blush, it's not clear these statements even opine on causation. Rather, the files appear to convey Cole's description of his conditions to his doctors.

Start with Dr. Atkins' report. The report describes how Cole "present[ed]" to the physician, saying that he had "neck pain and discomfort" that "started when an explosion rattled his home." R. 31-1, Pg. ID 169. The doctor didn't decide for himself that the explosion caused Cole's neck pain; he simply reported what Cole told him.

Johnson's report is similar. He explains that Cole "present[ed] to the clinic with chief complaints of neck and arm pain secondary to an explosion." R. 32-2, Pg. ID 193. How does he

---

[3] On appeal, Cole argues the district court improperly held that his expert materials failed to meet Federal Rule of Civil Procedure 26(a), which sets standards for expert reports. But we need not address whether Cole's materials complied with Rule 26(a), because his submissions failed to provide expert testimony on causation.

know about this explosion? Johnson quotes a "Dr's note," apparently from Dr. Atkins, noting that an explosion "caused [Cole] to forcefully be thrown back."[4] *Id.* Nowhere does Johnson give his own opinion of what occurred. Instead, he appears to write down what Cole told another doctor. All told, these files aren't causal evidence.

Even with these files, Cole can't survive the refinery's motion for summary judgment. The key question is whether Cole has evidence that the explosion caused his injuries. To make this showing, he needed to present "significant probative evidence" showing a doctor thought the explosion caused his harms. *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). But Cole didn't do that. Instead, he pointed to two sentences in medical records in which a doctor reports Cole's statements about what happened. Then, he points to a physical therapist report, but that report simply parrots the first doctor's notes. That's not significant probative evidence showing an expert agreed that the explosion caused his injury. At best, the sentences show that the doctor's accepted his statements at face value. There's no independent analysis or statement by a doctor that the injuries were consistent with an explosion. And even if these isolated statements in the medical report raise some doubt, "some metaphysical doubt" isn't enough to meet Cole's burden. *Moore*, 8 F.3d at 340. So the district court was right to grant the refinery's motion for summary judgment.

\* \* \*

Because Cole's arguments fail, we affirm.

---

[4] Cole's briefing appears to recognize that Johnson didn't make his own independent finding of causation, since it explains that Johnson "was entitled to rely on the information he received in the ordinary course of treatment." Appellant Br. at 8.